DAVIS *v.* FRAZIER.

Error.

---

ANNE A. DAVIS v. B. F. FRAZIER.

(Filed 14 April, 1909.)

1. **Deeds and Conveyances—Construction—Entire · Instrument—In-
tent.**

   In construing a deed the intent of the parties as embodied in the
   entire instrument should prevail, and each and every part must
   be given effect, if it can be done by fair and reasonable intend-
   ment, before a subsequent clause thereof· may be construed as
   repugnant to or irreconcilable with a preceding one.

2. **Same—Timber—Time for Cutting—Second Cutting.**

   A deed to standing timber contained a clause giving the grantee
   the right to enter upon the lands and cut and remove the timber
   within five years from a specified date, followed by a clause pro-
   viding that the grantee shall not have the right to cut over the
   land for timber a second time: *Held,* the second clause was not
   repugnant to or irreconcilable with the estate granted in the first,
   and conveyed a base or qualified fee in the specified dimensions
   of timber, determinable as to all timber not cut and removed
   from the land within the five years, and subject to the further
   provision that the land should not be cut over a second time for
   timber.

**3. Same.**

> Under a clause in a deed conveying standing timber of a certain dimension, providing that the grantee shall not have the right to cut over the land for timber a second time if the land had been entirely cut over once, within the terms and meaning of the contract, any further cutting would amount to an actionable wrong, and it would not be affected by the fact that here and there trees could be found which were within the dimensions specified; but this would not apply to trees of such dimension, cut within the time limited, upon distinct and definite portions of the land which had not been cut over at all.

ACTION heard before *Jones, J.,* and a jury, at November Term, 1908, of GRANVILLE.

There have been temporary restraining orders issued and served in the cause, and pending the action certain cross-ties have been seized and are now held under process of claim and delivery, issued in the same at plaintiff's instance. These cross-ties are claimed by one John Bullock, who has been allowed to interplead for the purpose, and who alleges that he bought and paid for the ties and owned same at the time of action instituted. On the hearing, and as determinative of the controversy, issues were framed for submission to the jury as follows:

1. "Did the defendant unlawfully enter upon the land of plaintiff and cut and remove therefrom a lot of cross-ties and hickory timber, as alleged in the complaint?

2. "What damages, if any, has the plaintiff sustained?

3. "Is the plaintiff the owner of and entitled to the possession of the cross-ties described in the affidavit filed in the claim-and-delivery proceedings in this action?"

At the close of plaintiff's testimony, on motion, the action was dismissed as on judgment of nonsuit, and plaintiff excepted and appealed.

*A. A. Hicks* and *B. S. Royster* for plaintiff.
*V. S. Bryant, Aycock & Winston* and *T. Lanier* for defendant.
*Graham & Devin* for interpleader.

HOKE, J., after stating the case: The evidence showed that on 31 May, 1905, the plaintiff, by written deed, had conveyed to Heidlebaugh and LeFever all the standing timber on three cer-

tain tracts of land in Granville County, fully described, "which now measures, or shall measure during the term of years hereafter set out, as much as ten inches in diameter at the butt," etc. "To have and to hold said timber unto the said Heidlebaugh and LeFever and their heirs and assigns, in fee simple, subject to the following conditions and agreements: (1) That the parties of the second part may enter on said land, etc., and cut and remove said timber in such manner and at such place and places as they may deem necessary, and may construct and operate all such mills and other devices in cutting and preparing such timber for market, roads, tramroads, railroads, stables, shanties and other buildings, over and upon such land as may be deemed necessary for cutting and removing said timber, and may have full power and authority to remove from said land at any time all machinery, buildings, etc., placed upon the land for said purpose. (2) And the said parties of the second part, and their heirs and assigns, have the right to enter upon and begin to cut and remove the said timber at any time they may desire; and all the timber not so cut and removed within five years from 25 May, 1905, shall revert to and become the property of the party of the first part and her heirs and assigns. (3) And it is expressly agreed and understood that the said parties of the second part shall not have the right to cut over the lands hereinafter described, a second time for timber, and that the said Mrs. Anne A. Davis shall have the right to take up the wood and cut any trees for her own use after the same have been cut over by the parties of the second part, and the parties of the second part agree not to injure the wire fences now upon said land."

There was evidence tending to show that the grantees entered the land under this deed, placed their mills, built shanties and constructed the necessary roads for the purpose, and, having cut over all the land included in the contract, removed their mills, machinery, etc., except the shanties, which they sold; and that after this was done the defendant, claiming the right to do so, had entered on the land and cut the timber and ties and committed the spoil and injury for which the plaintiff now seeks redress.

150—29

On this question Dr. I. H. Davis, among other things, testified as follows: "Am son of Mrs. A. A. Davis, plaintiff. Heidlebaugh and LeFever cut over all the land described in the deed or contract, and then took up their mills, machinery, etc., and moved everything off the land, except some shanties, which they sold. They moved away from the land in August or September, 1907, and went to Virginia, I think. They cut over all the land described in the deed or contract. Mr. Frazier, the defendant, had hands cutting timber on the lands in October, 1907, and, acting under instructions from my mother, I ordered them to stop, and I also notified Frazier personally to stop, but he paid no attention to such notice, and this suit was brought in March, 1908, and a restraining order was served on the defendant."

It does not clearly appear from the testimony that the defendant entered as assignee under this deed; but, assuming this to be true, we are of opinion that the plaintiff is entitled to have her cause submitted to a jury, and there was error in dismissing the same as on judgment of nonsuit. According to our decisions, the deed in question conveyed to the grantees, Heidlebaugh and LeFever, a fee simple in the timber of the specified dimensions, determinable as to all timber not cut and removed from the land within five years, and subject to the further provision "that the land should not be cut over for timber a second time." If the evidence of I. H. Davis, above set out, and other of like tenor, should be accepted by the jury, and it should be established that the land described in the deed had been once entirely cut over, or that a distinct and definite portion of the land had been once cut over, then the right of the grantees, or persons claiming under them, to cut and remove timber, as to all or the stated portion of said land, by the express provision of the contract, would cease and determine, and any further cutting would amount to an actionable wrong. And if this land had been entirely cut over once, within the meaning of the term as contained in the contract, the result indicated would not be affected by the fact that here and there through the different tracts trees could be found which were within the specified dimensions. If, however, there should be distinct and definite

DAVIS *v.* FRAZIER.

portions of the land which had not been cut over at all, as to such portions we are of opinion that the rights granted under the contract will continue until they are cut over once, or the right to cut expires by the limitation as to time.

It is contended for the defendant that the stipulation contained in section 4, to the effect that the land should not be cut over a second time, is in direct conflict with the former parts of the instrument and entirely repugnant to the estate which is thereby expressly conveyed, and should therefore be rejected; but we do not think this a correct interpretation of the contract in question. It is an undoubted principle that a "subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent of the contract will be set aside." This was expressly held in *Jones v. Casualty Co.,* 140 N. C., 262, and there are many decisions with us to like effect; but, as indicated in the case referred to and the authorities cited in its support, this principle is in subordination to another position, that the intent of the parties as embodied in the entire instrument is the end to be attained, and that each and every part of the contract must be given effect, if this can be done by any fair or reasonable interpretation; and it is only after subjecting the instrument to this controlling principle of construction that a subsequent clause may be rejected as repugnant and irreconcilable. *Jones v. Casualty Co., supra;* Lawson on Contracts, secs. 388, 389; Bishop on Contracts, secs. 386, 387.

In *Jones v. Casualty Co.* the doctrine is thus stated: "Another principle applicable to the case before us, and equally well established, is that while clauses in a contract apparently repugnant must be reconciled if it can be done by any reasonable construction, yet a proviso which is utterly repugnant to the body of the contract and irreconcilable with it will be rejected; likewise a subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent of the contract will be set aside."

And in Lawson on Contracts, *supra,* it is said: "The third main rule is that that construction will be given which will best effectuate the intention of the parties, to be collected from the whole of the agreement; and, to ascertain the intention, regard

must be had to the nature of the instrument, the condition of the parties executing it, and the objects which they had in view. * * * Courts will examine the whole of the contract, and so construe each part with the others that all of them may, if possible, have some effect, for it is to be presumed that each part was inserted for a purpose and has its office to perform. So, where two clauses are inconsistent they should be construed so as to give effect to the intention of the parties as gathered from the whole instrument. So every word will, if possible, be made to operate, if by law it may, according to the intention of the parties."

And in Bishop on Contracts the author says (section 386): "After interpretation has exhausted itself in harmonizing the several clauses and words, if there is a residue which cannot be reconciled the repugnancy must be got rid of by rejecting what will free the writing from it." And in section 387: "If the main body of the writing is followed by a proviso wholly repugnant thereto, it must necessarily be rejected, because otherwise the entire contract will be rendered null; but where it can be construed to qualify the main provisions, so that all may stand together, it will be retained."

A proper application of the doctrine correctly stated in these authorities will show that there is no irreconcilable conflict in the provisions of this contract, but that each and every part of it can be given effect. The instrument conveys to the grantees a base or qualified fee in the timber, determinable as to all timber not cut and removed within the time specified, *i. e.*, five years, and then provides that the cutting may commence at any time within the five years the grantees may desire, and that the land embraced in the contract shall not be cut over a second time. This last stipulation does not at all nullify the grant, but only establishes a method or condition by which the right or interest granted may be made available; and there is no reason, as stated, why this provision, made a substantial part of the contract by express agreement of the parties, should not be given effect. The insertion of this provision was no doubt caused by the suggestion indicated in *Hardison v. Lumber Co.*, 136 N. C.,

175, where it is said, in substance, that if the parties desired protection against a "second cutting" they should have so contracted.

It is further urged for defendant that the fourth clause of the contract, being a condition subsequent, working a forfeiture of the estate, should be strictly construed. If it be conceded that the clause in question is a condition subsequent, the position contended for by defendant is well recognized, but it is only a rule of interpretation and does not obtain when the meaning of the contract is so plain that no construction is permissible. This is clearly illustrated and upheld in the case to which we were referred by counsel, *Epperson v. Epperson,* Supr. Ct. Va., reported in 62 S. E. 344. In that case the Court held as follows: "While courts regard with disfavor conditions and defeasances which are calculated to prevent or defeat the absolute vesting of titles, they will not hesitate to give effect to the intention of the parties when the condition or defeasance is clear and explicit."

We have purposely refrained from definite expression as to the right to certain cross-ties and their seizure by process of claim and delivery sworn out in this action. The cause having been dismissed as on judgment of nonsuit at the close of plaintiff's testimony, the evidence which makes for the right and claim of the interpleader to these ties has not been disclosed, and we have considered it well to withhold our opinion until the facts concerning them shall be more fully ascertained and presented. For the reasons heretofore stated, this order of nonsuit will be set aside and the cause restored to the docket.

Reversed.