M. J. HENDRICKS AND WIFE, EMMA, v. MOCKSVILLE FURNITURE COMPANY.

(Filed 9 November, 1911.)

1. Contracts—Interdependent Conditions—Performance.

One who seeks to recover upon a contract containing interdependent conditions for him to perform, must show a compliance with the conditions on his part in order to recover.

2. Contracts, Interpretation of—Intention—Construed as a Whole.

The court, in construing a contract, will examine the whole instrument with reference to its separate parts to ascertain the intention of the parties, and will not construe as meaningless any part or phrase thereof when a meaning may thus be found by any reasonable construction.

3. Same—Independent Conditions—Performance—Executory Contracts—Title—Damages.

A contract appearing to be a bargain and sale of certain timber interests in land further stipulated that the grantor was to cut the timber into lumber at a certain price per thousand feet, keep it stacked for six months, with advances of money to be made by the grantee in certain proportions, and the balance of the purchase price to be paid when the lumber was delivered to

the defendant's factory: *Held*, the title to the timber did not pass to the grantee, for by a proper interpretation of the contract its subject-matter was the sale of lumber, to which the title would only vest upon the performance by the grantor of his obligation to hold it for six months and then deliver it to the grantee; and hence the contract was executory and the latter would not be liable for any loss by fire occurring to the lumber while it was in the grantor's possession, before the expiration of the six months and its delivery under the terms of the contract.

APPEAL from *Lyon, J.,* at Spring Term, 1911, of DAVIE.

This action is to recover the purchase price of certain lumber, which the plaintiffs, M. J. Hendricks and wife, Emma G. Hendricks, alleged they sold to the defendant.

On 23 December, 1905, the plaintiffs and defendant entered into the following contract:

NORTH CAROLINA—Davie County.

This contract, made and entered into this day by and between M. J. Hendricks of Davie County, N. C., The Mocksville Furniture Company, witnesseth: That the said M. J. Hendricks has bargained, sold to the said Mocksville Furniture Company, its successors, and does hereby bargain, sell, and convey to said Mocksville Furniture Company and its successors all the oak and poplar timber (except the young trees and some for board purposes) suitable for furniture purposes on the following lands situate in Davie County, N. C., and bounded as follows, to wit:

On the east by the lands of Mrs. B. C. Rich and Mrs. M. E. Tatum and Mocksville Furniture Company; on the north by the lands of Mocksville Furniture Company and Sam Eaton; on the west by the lands of Miss Mattie Eaton; on the south by the lands of J. W. Etchison and A. J. Hutchins and L. A. Furches, containing 200 acres more or less. The price to be paid for said lumber by said Mocksville Furniture Company is $15 per thousand feet, less the mill culls, delivered at their factory in Mocksville, N. C., after the said lumber has been sawed and stacked by the said M. J. Hendricks for six months, and he agrees to cut and saw the whole within one year from this date. The Mocksville Furniture Company agrees to advance to said

M. J. Hendricks $7.50 per thousand feet as soon as said lumber is stacked on sticks, and the balance to be paid by said Mocksville Furniture Company when the same is delivered at Mocksville as aforesaid. Received of Mocksville Furniture Company $100, advanced on above lumber, receipt of which is hereby acknowledged.

Witness my hand and seal, this the 23d day of December, 1905.

M. J. HENDRICKS.          [SEAL.]

Witness:  J. MINOR.          EMMA G. HENDRICKS.

About the last of August or the first of September, 1907, acting under this contract, the plaintiffs had at their mill, about eight miles from Mocksville, 30,000 feet of lumber in stacks, but which had been stacked less than six months, and 2,000 feet of lumber, which had been recently sawed and was not stacked, all of which was about that time destroyed by fire without negligence on the part of plaintiff or defendant.

The defendant advanced to the plaintiff $7.50 per thousand on the 30,000 feet which had been stacked, and nothing on the 2,000 feet.

Thereafter the plaintiff delivered to the defendant 30,000 feet of lumber under said contract, upon which had been advanced $7.50 per thousand, and demanded payment of the remainder of the contract price, which the defendant refused, claiming that the plaintiffs owed it the amount it had advanced on the lumber which was burned.

His Honor held that under said contract the title to the lumber was in the defendant, and rendered judgment in favor of the plaintiffs for $480, being $7.50 per thousand on the 30,000 feet and $15 per thousand on the 2,000 feet, both of which lots were burned, and $7.50 per thousand on the 30,000 feet delivered, and for $32.36, which the defendant admitted it owed on other matters.

The defendant excepted and appealed.

*Jacob Stewart and E. E. Raper for plaintiff.*
*E. L. Gaither and T. B. Bailey for defendant.*

ALLEN, J., after stating the case: The determination of the controversy between the plaintiffs and the defendant depends upon the interpretation of their contract. If it is executory, and under its provisions the title to the timber was not in the defendant, there could be no liability, because it is admitted that the timber had not been stacked six months, and there was no delivery at Mocksville—material stipulations, which the plaintiffs agreed to perform.

This is upon the familiar principle that one who seeks to recover upon a contract with interdependent conditions must show performance on his part. *Lowing v. Rintles,* 97 N. C., 350.

As was said in *Hornthal v. Howcott,* 154 N. C., 229: "The object of courts in the construction of a paper-writing is to discover what the parties to it intended, and whether apt language has been used to give effect to that intention," and, "The intent as embraced in the entire instrument is the end to be attained, and each and every part of the contract must be given effect, if this can be done by any fair and reasonable interpretation." *Davis v. Frazier,* 150 N. C., 451.

In this last case *Justice Hoke* quotes with approval Lawson on Contracts, secs. 388 and 389, as follows: "The third main rule is that that construction will be given which will best effectuate the intention of the parties, to be collected from the whole of the agreement; and, to ascertain the intention, regard must be had to the nature of the instrument, the condition of the parties executing it, and the objects which they had in view. . . . Courts will examine the whole of the contract, and so construe each part with the others that all of them may, if possible, have some effect, for it is to be presumed that each part was inserted for a purpose and has its office to perform. So, where two clauses are inconsistent they should be construed so as to give effect to the intention of the parties as gathered from the whole instrument. So every word will, if possible, be made to operate, if by law it may, according to the intention of the parties."

If we apply this rule of construction, and look at the entire instrument, what did the parties intend?

The plaintiff argues with much force that there is nothing ambiguous in the language used, and that it says in express terms that the timber is conveyed to the defendant.

This conclusion is reached, however, by looking at only a part of the contract, and that part, standing alone, has no consideration to support it. If the parties intended the title to the timber to pass upon the execution of the contract, it would be reasonable to expect the conveyance of the timber to be upon consideration of so many dollars, or for a certain amount per thousand feet. It nowhere appears that the defendant agreed to buy or pay for timber. It wanted lumber, and agreed to pay for it when delivered at Mocksville.

The amount paid in advance is not spoken of as a payment, but an advancement.

Another circumstance which tends to show that it was not the intention of the parties that the paper-writing should operate to pass the title to the timber at the time it was signed is that a part of the land on which the timber stood belonged to Mrs. Hendricks, and there is no seal to her signature, and no probate and private examination as to her. Mr. Hendricks said on his examination: "The description of the land in the contract covers about 150 acres of the lands of myself and wife." Also, there is no provision allowing the defendant to enter and cut, upon failure of the plaintiff to do so.

As it appears to us, the situation of the parties was this: The plaintiffs had timber, which they wished to sell, and the defendant needed lumber. The plaintiffs agreed to cut and saw their timber into lumber and deliver it at Mocksville for $15 per thousand feet; but as the defendant could not use green lumber, it was stipulated that the lumber should be stacked six months before delivery and that the defendant should advance $7.50 per thousand feet to aid in payment of operating expenses.

This is, in our opinion, a proper interpretation of the contract, and if so, it is executory and the title to the lumber was not in the defendant at the time of the fire.

A contract, in many respects similar to the one now before us, was considered in *Wiley v. Lumber Co., ante,* 210. In that case plaintiff and another sold to the defendant "all the pine and gum timber of every description above the size of 12 inches at the base on a certain tract of land," the written contract of conveyance and sale providing that defendant should have full time to have said timber cut and removed from said land, and extending in any event for such purpose to the full term of three years. The instrument also conveyed to defendant, the grantees, the privilege to have a right of way over the grantors' lands and to erect thereon necessary tramroads, etc., for the purpose of carrying out the timber; and there was further provision that the grantors were to cut and deliver said timber at the log bed of defendant's tramroad and to be paid therefor at the rate of $4 per thousand, etc.; and *Justice Hoke,* speaking for the Court, says: "Defendant is right in the position that when one has bought and paid for a lot of growing timber, and same has been conveyed him with the privilege of removal within a given time, the contract as to the removal is so far unilateral that the purchaser is not obligated to cut and remove the timber. If he fails to do so within the time, his right or estate therein is forfeited and inures, as a rule, to the owner of the land. We have so held in two cases at the last term. *Hornthal v. Howcott,* 154 N. C., 228; *Bateman v. Lumber Co.,* 154 N. C., 248. But the contract in question here is not of that character. Applying to it the accepted rule of construction, that 'The intent of the parties as embodied in the entire instrument is the end to be attained, and that each and every part must be given effect, if this can be done by any fair and reasonable interpretation' (*Davis v. Frazier,* 150 N. C., 451), a perusal of this entire instrument will disclose that while it begins by reciting $450 as the consideration, the controlling stipulation of the contract provides that the parties plaintiff were to cut and deliver 'said timber' at the log bed and the parties defendant were to pay for the same the sum of $4 per thousand 'feet'; and it is also expressly provided that the $450 first

referred to as the consideration was only an advancement on the contract price and to be accounted for as the timber was delivered."

There was error in the ruling of the court, and a new trial is ordered.

New trial.