EUGENIA SCARBOROUGH, VIVIAN SCARBOROUGH AND WILLIAM S. SCARBOROUGH v. CALYPSO VENEER COMPANY.

(Filed 2 May, 1956.)

**1. Trial § 22a—**

On motion to nonsuit, the evidence in behalf of plaintiffs must be taken as true and plaintiffs given the benefit of every fair inference reasonably deducible therefrom.

**2. Deeds § 22—Where deed provides that timber should be cut over only once, second cutting of distinct portion constitutes trespass.**

Where a deed conveys all merchantable timber of a specified size upon the tract of land described, with right to cut and remove for a designated term, with provision for reversion of all timber not cut and removed during the term specified, and with further provision that the grantee should have the right to cut over the said lands only once during the term, *held*, the cutting of the timber from the tract or any distinct and definite portion thereof terminates the right of the grantee in respect thereto, and any cutting thereafter on such portion would be unauthorized and would constitute a trespass, notwithstanding that such second cutting is within the time allowed, and upon evidence tending to show that the grantee cut over the tract or a distinct portion thereof for saw timber and later went back and cut over the same portion for pulpwood, the issue should be submitted to the jury and nonsuit is error.

**3. Same: Evidence § 5—**

It is a matter of common knowledge that new timber growth begins immediately after land is cut over, and that a second entry with incidental roadways and placing of locations for a sawmill would seriously interfere with the growth of new timber. .

**4. Deeds § 22—**

Where deed conveys all merchantable timber of a specified size, together with the laps, tops and slabs of the timber cut, with right to cut and remove within a specified time, the grantee has the right to remove such laps, tops and slabs within the designated period, irrespective of a provision in the deed that the grantee should have the right to cut over the land only once, since such provision does not protect grantors against removal of timber cut, but only against a second cutting.

PARKER, J., dissenting.

APPEAL by plaintiffs from *Frizzelle, J.,* September 1955 Civil Term, LENOIR Superior Court.

Civil action for damages on account of the defendant's alleged wrongful re-entry upon plaintiffs' land and the cutting and removing of timber a second time in violation of the terms of their timber deed.

The plaintiffs, on 18 September, 1951, executed to the defendant a fee simple warranty deed for all the merchantable timber ten inches or more in diameter, twelve inches from the ground, situate on a certain described tract of land in Lenoir County.

The deed contained the following pertinent conditions:

"But this conveyance is made subject to and together with the following provisions:

"(b) All timber which is cut and removed from said lands shall be cut and removed therefrom on or before five (5) years next after the date of this deed; and all timber not cut and removed from said land on or before said date, shall be the property of the parties of the first part.

"(c) Parties of the second part shall have the right to remove from said land all of the laps, tops and slabs of the timber cut by it of the size above specified, provided the same are removed from said lands on or before five (5) years next after the date of this deed. But all tops, laps, and slabs left on said land after said date shall be the property of the parties of the first part.

"(d) In cutting and removing said timber, party of the second part shall have the right to cut or injure such smaller timber as is reasonably necessary to handle and remove the timber which it is allowed to cut under this deed, but shall take all reasonable precautions that no smaller timber shall be cut or injured other than such as is reasonably necessary.

"(e) For the purpose of cutting, milling, and removing said timber, party of the second part shall have the right to erect and maintain upon said lands a sawmill.

"(f) For the purpose of cutting, milling, and removing said timber, party of the second part shall have the right at such location as it may elect to open and maintain roadways leading to the public highway, but shall so far as is reasonably convenient use for such purposes roadways already opened; provided, that no roadway may be established upon or over any cleared land.

"(g) Party of the second part shall have the right to cut over said lands only once during the five-year period as hereinabove provided."

The defendant denied liability and alleged: "The defendant has strictly complied with all terms and provisions of the said timber deed in the operations upon said land."

The evidence will be discussed in the opinion. At the conclusion of all the evidence the court granted the motion for nonsuit and from judgment accordingly, the plaintiffs appealed.

*Jones, Reed & Griffin for plaintiffs, appellants.*
*James N. Smith for defendant, appellee.*

HIGGINS, J. The plaintiffs' only assignment of error is based on their exception to the judgment of nonsuit. The real controversy arose over provision (g) of the timber deed and whether the defendant had violated that provision by cutting over the land, or at least substantial parts of it, a second time.

The plaintiffs offered Clarence Wade as a witness, who testified: "The Scarborough land is located right across the road from where I live. They went over and got the big timber. Then they came back and cut the other timber, the pulpwood. There was enough difference in the time which elapsed between the time they cut the big timber and the time they went back and cut the pulpwood that the bark would fall off the tops when they did go back after it . . . It was at least six or eight months, or it might have been more. . . . The timber nearest my house was mostly pine timber. From what I could see nearest my house I will say it was cut over twice . . . I will say that the defendant cut over the same area in the second cutting that it did in the first cutting.

"They went over and got the big timber and went back over on the same ground and cut the other timber. I mean the same acreage. They went back the second time. The pulpwood was not all grouped together. They had to scatter around and get it. They got it some here and yonder, first one place and then another."

Sam Barwick testified: "I have lived near the Scarborough land since 1919. They moved the sawmill and started cutting in the Fall of 1951. They cut the hill timber then went into the low ground and got the gum and cypress and they moved out in the Fall. I would guess that about six months elapsed between the first cutting and the second cutting, that is, the pulpwood . . . they moved out in the Fall and the next Spring, in March while we were working in our tobacco beds, the foreman of the pulpwood crew came to the bed where I was working. I said, 'Look here man, you are cutting that timber twice.' He told me they were going to cut it and if anything came up about it or anybody wanted to know anything about it, to refer them to Calypso Veneer Company. . . . I would guess about six months elapsed between the first cutting and the second cutting, that is, the pulpwood."

G. E. Jackson, an expert timber cruiser, testified in substance that he had made a cruise of the timber before the sale in September, 1951, and that he made another cruise beginning on 3 June, 1953. In the course of the cruise it was easy to determine the stumps that had been recently cut. "There was a lapse of time between the recent cut and the original cut on the tract. . . . I would say that from four to six months had elapsed between the last cutting and the next cutting before that, it looked like the weathering of the stumps would indicate that." He estimated the newly cut trees amounted to 60,000 feet, worth $30.00 per thousand.

In passing on the motion for compulsory nonsuit the court must assume the evidence in behalf of the plaintiffs is true. They must have the benefit of every fair inference the jury may reasonably draw from that evidence. *Hughes v. Thayer,* 229 N.C. 773, 51 S.E. 2d 488. Measured by this standard, the evidence offered was sufficient to raise jury questions: (1) Did the defendant breach the terms of its contract by cutting over the land, or a substantial part thereof, more than once; and (2) if so, what damages are the plaintiffs entitled to recover?

Similar questions were presented to this Court in the case of *Davis v. Frazier,* 150 N.C. 447, 64 S.E. 200. The deed in that case conveyed all the merchantable timber of a specified size and provided "the land shall not be cut over for timber a second time." The evidence disclosed that Frazier, the grantee, had cut over some or all of the land and moved out in August or September, 1907, and returned in October, 1907, for the purpose of further cutting. In passing on the questions presented, *Justice Hoke,* for this Court, said: "If . . . it should be established that the land described in the deed had been once entirely cut over, or that a distinct and definite portion of the land had been once cut over, then the right of the grantees, or persons claiming under them, to cut and remove timber as to all, or the stated portions of said

land, by the express provision of the contract would cease and determine, and any further cutting would amount to an actionable wrong. . . . If, however, there should be distinct and definite portions of the land which had not been cut over at all, as to such portions we are of the opinion that the rights granted under the contract will continue until they are cut over once, or the right to cut expires by limitation as to time." . . .

"The instrument conveys to the grantees a base or qualified fee in the timber, determinable as to all timber not cut and removed within the time specified, . . . and that the land embraced in the contract shall not be cut over a second time. This last stipulation does not at all nullify the grant, but only establishes a method or condition by which the right or interest granted may be made available; and there is no reason, as stated, why this provision, made a substantial part of the contract by express agreement of the parties, should not be given effect. The insertion of this provision was no .doubt caused by the suggestion indicated in *Hardison v. Lumber Co.*, 136 N.C. 175, where it is said in substance, that if the parties desired protection against a 'second cutting' they should have so contracted."

According to the rule laid down in the *Frazier case*, if the jury should find from the evidence in the case at bar that the lands described in the plaintiffs' deed or any "distinct and definite portion thereof" had been once cut over within the meaning of provision (g) in the deed, then as to such portion the right of the defendant would cease and terminate and any cutting thereafter on such portion would be unauthorized and would constitute a trespass for which the plaintiffs are entitled to recover.

The deed in this case, as in the *Frazier case*, conveyed all merchantable timber ten inches in diameter without any other classification. The deed makes no distinction between saw timber and pulpwood. It gives the defendant the right to cut over the land once only for merchantable timber—not once for saw timber and again for pulpwood. Had the parties seen fit to classify the merchantable timber as saw timber and pulpwood there might be some basis for an argument the defendant could cut over the land once for each type. If the defendant by its own arbitrary classification can cut once for saw timber and once for pulpwood there appears no sound reason why it cannot make further classifications and cut once for pine, once for oak, once for gum, and once for cypress.

The purpose of provision (g) was to prevent the spoilage of any new growth and small timber not conveyed by the deed by cutting over the same area or areas of the boundary more than once. Provision (g) would be nullified if the defendant from time to time within the five

years from the date of the deed could cut over the same area, each time cutting timber of a different type. In the areas cut over by defendant for saw timber in the first operation defendant had no right to go back later in a separate, distinct operation and cut over the same area for saw timber or for pulpwood. On the other hand, in areas of the boundary, if any, not cut over for saw timber in the first operation, defendant would have the right to go back later in a separate, distinct operation and cut over such areas for saw timber and pulpwood.

Other provisions of the deed lend support to the interpretation here placed on the controversial provision. The deed gave the defendant "the right to open and maintain roads"; "the right to cut and injure such smaller timber as is reasonably necessary to handle and remove the timber which it is allowed to cut under the deed"; and "the right to erect and maintain a sawmill."

It is a matter of common knowledge that new growth, especially of pine, begins immediately after the land is cut over. Under improved forestry methods urged both by the State and Federal Governments, plantings are often begun soon after removal of the original growth. To enter a second time and again build roadways, cut smaller timber and place a sawmill on the land after it has been once cut over would seriously interfere with the growth of a new timber crop. The plaintiffs had the right to contract against such interference, and apparently did so contract by the inclusion of paragraph (g) in the timber deed.

The defendant in this case insists it did not exhaust its right to cut and remove trees suitable for pulpwood by having previously cut over the land for saw timber and cites the case of *Cammack v. R-L Lumber Co.*, Tex. Civ. App., 258 S.E. 488, as authority. Cammack's deed to the R-L Lumber Company conveyed "the merchantable timber, *both pine and hardwood,*" and "provided that if said land shall be cut over *and timber removed therefrom* (emphasis added) at any time before the expiration of the said eight years, . . . all timber remaining on said land shall revert back to me." The R-L Lumber Company conveyed the oak stave timber 18 inches in diameter to be removed in two years. After the removal of the oak stave timber Cammack sought to restrain further cutting. The Texas Court of Civil Appeals held the term "cut over" meant a cutting over for pine and hardwood, the classifications fixed in the deed, and that the removal of the stave timber alone did not exhaust the defendant's right.

In the case at bar the plaintiffs sought to include as a part of their cause of action for damages the removal of tops, laps and slabs after the defendant's re-entry in the Spring of 1953. The defendant's contention that it had the right to remove tops, laps and slabs at any time within the period of five years from the date of the deed must be sus-

tained.  These items revert to the grantors only upon the expiration of
the five-year period.  Provision (g) does not protect ·the plaintiffs
against their removal for the reason that removal does not constitute
a second cutting but merely the salvaging of that which had already
been cut.

The discussion here, it must be understood, is based on the assump-
tion not that the jury will, but that it may find the evidence to be true;
and for that reason the case is sent back so that the jury may hear both
sides and pass on the issues of fact involved.

Reversed.

PARKER, J., dissenting:   The plaintiffs executed and delivered to the
defendant a timber deed conveying certain standing timber on their
lands.   The agreed price was $20,000.00, which the defendant paid.
The timber deed conveyed *all timber upon the land* measuring 10 inches
or more at the stump 12 inches from the ground, and all laps, tops and
slabs of the timber cut by the defendant of the size above specified.
The timber of the size described and conveyed by the timber deed con-
sisted of (1) timber suitable for saw timber, as pine, gum, oak and
cypress, and (2) timber suitable for pulpwood.  The defendant main-
tained two separate crews of men:  one to cut and remove saw timber,
and another to cut and remove pulpwood and laps, tops and slabs.

The paragraph in the timber deed, upon which plaintiffs base their
action, does not require that all the timber sold must be cut in one
continuous operation.   Nor does it provide that when one kind of
timber conveyed is cut, the defendant may not afterwards within the
five-year period, cut the other kinds of timber conveyed.   Under the
deed the defendant had a perfect right to *cut the saw timber conveyed,*
to move out, and two or three years later to come back and cut and
remove *the pulpwood of the size conveyed in the deed,* provided that it
was cut within the five-year period.

This Court said in *Hardison v. Lumber Co.,* 136 N.C. 173, 48 S.E.
588:  "There are no words to restrict the purchaser to a continuous
cutting.  Had the parties so intended, they should have so contracted.
It may be inconvenient to the plaintiff to have the purchaser enter a
second time and cut down young trees, incidentally, in making his
roads, but the seller should have foreseen and provided for this in mak-
ing his contract."

In 54 C.J.S., Logs and Logging, p. 698, it is said:  "Ordinarily the
cutting need not be continuous to comply with a contract to cut and
remove within a specified term of years."

The timber deed was dated 18 September 1951.  The defendant first
cut and removed the saw timber, which work ended, according to the

plaintiff's evidence, in "the summer or real early fall of 1952." The crew for cutting the saw timber left the land, and several months later the pulpwood crew went in and cut and removed the "cat-faced" and crooked trees, not suitable for saw timber, but of use as pulpwood, which pulpwood was conveyed in its deed. The cutting of pulpwood was finished in March 1953. Thus, the entire cutting and removing of trees by defendant was completed within 18 months after the execution and delivery of the timber deed, although, according to the timber deed, the defendant had five years after 18 September 1951 to cut and remove the timber it had bought.

There is no allegation in the complaint that the defendant cut and removed any tree from this land that was not of the size described and conveyed in the timber deed. The real controversy is whether the defendant had violated provision (g) of the timber deed by returning and cutting pulpwood after having cut and removed pine, gum, oak and cypress saw timber. Under the deed the defendant had such a right, because the pulpwood timber was part of the timber conveyed to it, for which it paid $20,000.00.

The majority opinion relies upon the case of *Davis v. Frazier*, 150 N.C. 447, 64 S.E. 200. In that case there was evidence tending to show that the grantees entered the land under a timber deed to them, placed their mills, built shanties and constructed the necessary roads for the purpose, and *having cut-over all the land included in the contract*, removed their mills, machinery, etc., except the shanties which they sold; and that after this was done the defendant, claiming the right to do so, had entered on the land and cut the timber and ties and committed the spoil and injury for which the plaintiff sought redress. It did not clearly appear from the testimony that the defendant entered as assignee under this deed; but the Court assumed this to be true. The contract expressly provided that the parties of the second part shall not have the right to cut-over the lands a second time for timber. The Court said: "If the evidence of I. H. Davis, above set out, and other of like tenor, should be accepted by the jury, and it should be established that the land described in the deed *had been once entirely cut-over* or that a distinct and definite portion of the land had been once cut-over, then the right of the grantees, or persons claiming under them, to cut and remove timber, as to all or the stated portion of said land, by the express provision of the contract, would cease and determine, and any further cutting would amount to an actionable wrong." Under the facts of that case, I accept the above as a statement of sound law. (Emphasis mine.)

In *American Creosote Works v. Campbell*, 172 La. 866, 136 So. 659, the Court said: "A person who purchases timber under contract like

the one under consideration, that is, certain designated timber with right of removal within a specified period, may exercise his right and remove the timber from a part of the tract and cease operations for a time, without losing the right to remove his timber from the remaining portion of the land.  But, if he goes over the entire tract and *removes therefrom the timber which he purchased,* he cannot later go upon the cut-over land and renew operations, even though the time given for removal has not expired."   (Emphasis added.)

In the instant case there is neither allegation, nor proof, that defendant had not purchased the pulpwood it cut; and there is no evidence tending to show it cut this purchased pulpwood with its first crew.   The defendant had purchased the pulpwood of the size described in the deed, and had the right to go back and cut all that it had purchased at a price of $20,000.00.

This is the second headnote in *Cammack v. R-L Lumber Co.* (Court of Civil Appeals of Texas), 258 S.W. 488: "Under timber deed conveying the merchantable timber, upon certain land, giving grantees 8 years in which to cut and remove the timber, and providing 'that, if said land should be cut over and timber removed therefrom at any time before the expiration of said 8 years . . . all the timber remaining on said land shall revert back to' grantor, and that 'this contract shall cease to operate and be of no force whatever,' grantees were not required to cut the different kinds of merchantable timber at one continuous cutting, and removal of merchantable timber of a certain kind, did not terminate grantees' rights during the 8 years to cut and to remove merchantable timber of other kinds, but merely prevented a second cutting of the same kind of timber."   In its opinion the Court said: "The contract does not provide that all the timber sold should be cut at one continuous cutting, nor that, when one kind of timber was cut, unless all the other kinds were cut at the same time, they could not be cut afterwards.   It is without dispute that no pine nor ash nor gum nor hickory nor cypress was cut, and yet all of those that were merchantable were sold, and appellant received the cash therefor.   That interpretation of contracts should be given as will carry out the intention of the parties, and if it be that the clause under consideration is of doubtful meaning, or is susceptible of being construed either as contended by appellant or by appellee, in such case the construction most favorable to the grantee must be given.   We do not think it clear and certain that the parties intended that if *any* timber should be cut and removed before the expiration of the time limit, or that if just *one* kind of the merchantable timber sold should be cut and removed, that *all* of the other kinds of timber sold remaining upon the land, although the time limit for removal had not expired, was forfeited under the contract.   In such case

the rule is well settled that the doubt should be resolved in favor of the grantee."

In *Smith v. Jasper County Lumber Co.* (Court of Civil Appeals of Texas), 46 S.W. 2d 430, the Court said: "From the evidence, *supra,* it appears that defendant in error at different times entered upon the land and cut some timber, but it is without dispute that there was never a general cutting of all the timber conveyed, or of all the kinds of merchantable timber sold. The cuttings were for special purposes to secure and preserve certain of the timbers and not a general cutting over of the land. It is not questioned but that much, several million feet, of the timber sold still remains on the land, and the time limit for its removal has not expired. We think it plain that plaintiffs in error sold and intended for the purchaser to have all the merchantable timber—of the various kinds—situated on the land, and that the purchaser, or his assigns, should have fifteen years, if necessary, in which to cut and remove said timber, and that the clause in the conveyance providing that, when the owner of the timber had cut over and abandoned the lands one time, all the remaining timber should revert to the grantors or their heirs or assigns, was intended to prevent the purchaser of the timber going on the land and cutting the timber and then holding the timber rights for a number of years, and, before the expiration of the time limit, going back and again cutting timber that had grown to be merchantable since the first cutting. We do not think the words 'cut over and abandoned said land one time,' or the other expression in the conveyance, 'after the entry upon said land and the cutting and removal of said timber therefrom, all right, title and interest of the grantee shall revert to the grantors,' meant that when one kind of timber, or a portion of one kind of timber, or a special grade of any of said timber, only was cut, unless all the other kinds of timber or the whole of the merchantable timber on the land were cut at the same time, that the right to cut same within the time limit named in the contract was lost, but that, when the timber sold (pine and various kinds of hardwood) was cut and removed, then the land would be 'cut over' and the right exhausted. *Cammack v. R-L Lumber Co.* (Tex. Civ. App.) 258 S.W. 488, 490 (writ refused)."

In 54 C.J.S., Logs and Logging, pp. 698-699, it is said: "It has been held that the buyer may not after going over the *entire tract and removing the timber which he has purchased,* subsequently renew logging operations on the cut-over land, even though the time given for removal has not expired, especially where the contract provides that cutting shall be continued until completed, and the land then released to the seller. However, the grantee does not surrender his right to resume the cutting of timber within the time limited where he ceased

operations in the expectation of a compromise purchase of the land, which was never made, or left substantial tracts of timber untouched." (Emphasis mine).

The plaintiffs do not allege in their complaint that the defendant had, in the first cutting, cut and removed all the timber it had purchased. They merely allege: "That the defendant cut-over the lands described in the said timber deed" and that the defendant re-entered the land and cut and removed pulpwood and saw timber.

In my opinion, the plaintiffs have completely failed to show by evidence that the defendant had cut and removed all the timber it had purchased, at the time it moved in and cut and removed pulpwood, laps, tops and slabs. The plaintiffs' evidence simply shows that the defendant cut and removed saw timber, and then after a lapse of from 4 to 10 months returned, cut and removed the pulpwood of the size and type described in its deed, and cut and removed the tops, laps and slabs—all of which it had bought and had a right to do under its deed. If there were any allegations and evidence tending to show that *the defendant had cut and removed all the timber it had purchased* of the size described and conveyed in the timber deed and then moved out, and returned to cut again, I would readily concede that it would be a case for the jury. But, in my judgment, there is neither allegation nor proof of such facts.

It is well settled law in this State that, if the language of the deed is doubtful, it will be construed most favorably to the grantee. *McKay v. Cameron*, 231 N.C. 658, 58 S.E. 2d 638; *Sheets v. Walsh*, 217 N.C. 32, 6 S.E. 2d 817; *Benton v. Lumber Co.*, 195 N.C. 363, 142 S.E. 229; *Outlaw v. Gray*, 163 N.C. 325, 79 S.E. 676. See also: 16 Am. Jur., Deeds, Sec. 165.

In my opinion, the judgment of nonsuit entered below was correct, and I vote to affirm.