JOHAH R. SNEED, ADMINISTRATOR, v. LIONS CLUB OF MURPHY, NORTH CAROLINA, INC.

(Filed 28 February, 1968.)

**1. Trial § 21—**

On motion to nonsuit, plaintiff's evidence must be considered in the light most favorable to him and with all contradictions resolved in his favor.

**2. Trial § 18—**

It is the province of the court to determine whether the evidence, circumstantial, direct, or a combination of both, considered in the light most favorable to plaintiff is sufficient to permit a legitimate inference of the facts essential to recovery, and it is the province of the jury to weigh the evidence and to determine what it proves or fails to prove.

**3. Appeal and Error § 59—**

On appeal from a judgment of nonsuit, the Supreme Court will discuss the evidence only to the extent necessary to show the legal basis for decision.

**4. Negligence § 37b—**

The operator of a swimming pool for hire is not an insurer of the safety of his invitees, but he does, however, owe them the duty to exercise due care to maintain his premises in a reasonably safe condition for the purpose for which he offers them to the public.

**5. Same—**

The operator of a swimming pool for hire is under a duty to mark the depths of the water, to provide a suitable number of competent attendants, and to institute a timely search for a missing bather.

**6. Same—**

Plaintiff's evidence was to the effect that her intestate, a 14 year old boy who was unable to swim, entered defendant's pool which had a range in depth from 2½ to 8 feet, that a 16 year old lifeguard was the only attendant in charge, that the only notice as to the depth of the water was at the deep end of the pool, that a lime treatment of the water rendered objects invisible at a depth of more than two feet, and that upon plaintiff's inquiry as to her son's disappearance the guard made a belated search of the pool where the body was discovered. *Held:* The evidence is sufficient to be submitted to the jury on the issue of defendant's negligence.

APPEAL by plaintiff from *Thornburg, J.,* August, 1967 Session, CHEROKEE Superior Court.

The plaintiff, administrator, instituted this civil action on January 31, 1967 to recover for the wrongful death of his intestate, Stanley Roy Davis, who had lost his life by drowning in a swimming pool operated and maintained by the defendant, Lions Club of Murphy, North Carolina, Inc. The plaintiff alleged the intestate's death was proximately caused by the defendant's negligence, in several particulars: (1) By failing to have competent personnel, in-

cluding competent lifeguards, at the pool, or proper equipment for reviving those who have been strangled or are in distress; (2) By placing in a pool of clear water a substance which discolored it to the extent the depth could not be ascertained more than 2 feet from the surface; (3) By failing to mark the various stages of water depth on the side of the pool; and (4) By the failure of the single 16 year old lifeguard to discover the body or search the pool after the boy's absence was made known.

According to the evidence offered at the trial, Stanley Roy Davis, age 14, paid the admission fee of 25¢ charged by the defendant for admission to its swimming pool. He entered the enclosure surrounding the pool when it opened for patrons at 1:00 on August 18, 1966. The water in the concrete pool was approximately 2½ feet deep at one end and sloped downward to a depth of 8 feet at the lower end, where the outlet and the springboard were located. Stanley Roy Davis was unable to swim.

Prior to the opening of the pool on August 18, 1966, the defendant's agents had treated the water in the pool by dumping into it a quantity of lime, which caused the water to become discolored and milky. Objects in the water were indistinguishable at a depth of more than 2 feet. One of the agents who treated the water with lime testified that before the lime treatment the water was clear. The witness, if permitted, would have testified that this was the first time that lime had been placed in the water. This evidence was excluded on defendant's objection.

Robert Allen Jordan, adversely examined by the plaintiff, testified that he arrived at the pool about 3:00, relieved another lifeguard, and went on duty as the sole guard at 3:30. He was then 16 years of age, had a junior lifeguard certificate, and had served as a junior lifeguard for one week the previous summer. He had served as lifeguard at the pool for almost two months prior to August 18, 1966. He admitted that he and another employee placed the lime in the pool on the morning of August 18. "As a result of making it murky, you could not see the bottom of the pool. . . . Prior to putting lime in it, the water was clear."

The evidence disclosed that at about the middle of the pool, where the water was approximately 5 feet deep, there was a rope fastened to each side of the pool by a bolt, or hook, with floats between the two anchors. There were other bolts, or hooks, for similar ropes, but no ropes were attached. There was this sign at the lower end of the pool: "Diving Board — Twelve feet."

Stanley's mother left him at the pool with some of his relatives and was gone for a short time. She was seen to return to the park-

ing area near the pool, leave her car and enter the enclosed area. A witness passed her at the entrance. He stated that he had seen Stanley in the shallow part of the pool within 30 seconds of the time he left the pool and met Stanley's mother. As Stanley's mother entered, a large number of persons (50 to 75), including children, were in the water. She failed to see Stanley and complained to the guard on duty, who stated he had just come on and advised her to "Ask him" and pointed to an automobile which the other guard was entering. He drove off before she was able to get to his automobile.

A search around the pool and in the restroom failed to locate Stanley. Finally, the guard went into the pool, near its lower end, and discovered the body, which was removed from the water. Efforts at artificial respiration were unsuccessful.

Dr. Paul E. Hill testified after examination that in his opinion Stanley died as a result of drowning. He further testified that anyone who is without respiration for 3 minutes has 75% chance for survival. If the time is 5 minutes, the chance for survival is 25%.

The evidence disclosed that the owners of the pool charged an admission fee of 50¢ for grown ups and 25¢ for children. Stanley had paid his fee.

Dr. Quinn Constantz, found by the Court to be an expert in "Aquatics, Lifesaving and Administration of Swimming Pools," in answer to a hypothetical question, stated (admitted over defendant's objection) that it is not in keeping with accepted procedures in the operation of swimming pools . . . that a 16 year old lifeguard with only a junior lifesaving certificate . . . was the sole lifeguard at a pool where 60 to 65 people were swimming.

The defendant filed answer and set up certain defenses, in addition to a denial of negligence. At the close of the plaintiff's evidence, the Court, on defendant's motion, entered judgment of involuntary nonsuit. The plaintiff excepted and appealed.

*T. M. Jenkins, Coward & Coward, Potts & Hudson by Jack H. Potts for plaintiff appellant.*
*Clarence N. Gilbert for defendant appellee.*

HIGGINS, J. The sole question before the Court for review is whether the plaintiff's evidence was sufficient to survive the defendant's motion for nonsuit. On this question, all evidence (which the Court admitted) must be considered in the light most favorable to the plaintiff. *Aasar v. Charlotte,* 265 N.C. 494, 144 S.E. 2d 610. This is so because the jury *may* find according to plaintiff's evidence. *Barefoot v. Joyner,* 270 N.C. 388, 154 S.E. 2d 543; *Taylor v. Brake,*

245 N.C. 553, 96 S.E. 2d 686; *Scarborough v. Veneer Co.*, 244 N.C. 1, 92 S.E. 2d 435. It is the province of the court to determine whether the evidence, circumstantial, direct, or a combination of both, considered in the light most favorable to the plaintiff, is sufficient to permit a legitimate inference of the facts essential to recovery; and it is the province of the jury to weigh the evidence and to determine what it proves or fails to prove. *Thomas v. Morgan*, 262 N.C. 292, 136 S.E. 2d 700; *Lane v. Dorney*, 252 N.C. 90, 113 S.E. 2d 33, overruling the same case on rehearing, 250 N.C. 15.

In the statement of facts the Court has detailed only that which tends to support the plaintiff's cause of action. On the question of nonsuit, even contradictions in the plaintiff's evidence are to be resolved in his favor. Ordinarily, when the Court reverses a nonsuit, it discusses the evidence only to the extent necessary to show the legal basis for decision. *Poindexter v. Bank*, 244 N.C. 191, 92 S.E. 2d 773. At the new trial, the jury should be uninfluenced by this Court's analysis of the evidence. Only that which is favorable to the plaintiff has been reviewed.

This Court determines as a matter of law what constitutes legal evidence sufficient for jury consideration. Its weight is exclusively a jury function. *State v. Squires*, 272 N.C. 402, 158 S.E. 2d 345.

Many courts and commentators have discussed the duties which swimming pool operators owe their paying invitees. The following appears to be a fair summary of the rules applicable to the questions presented in this appeal. The operator of a swimming pool for hire does not insure the safety of his invitees. He does, however, owe them the duty to exercise due care to see that his premises are reasonably safe for the purposes for which he offers them to the public. He is under a duty to install and maintain proper signs warning patrons of dangerous depths of the water. He should exercise ordinary care to provide a sufficient number of competent attendants to supervise the bathers and to rescue any of those who appear to be in danger. He should institute a timely search for a missing bather on ascertaining that such bather may have been lost in the water. *Hahn v. Perkins*, 228 N.C. 727, 46 S.E. 2d 854, citing many cases, including 33 A.L.R. 598, 58 Am. St. Rept. 709.

> "The proprietor of a public bathing resort has a duty to place and maintain signs to indicate water depths and to provide adequate supervision. He is under a duty, not only to be prepared to rescue those who may get into danger while bathing, but also to act with promptness and to make every effort possible to locate those who are known to be missing, and, if necessary, to rescue and resuscitate the missing person. Thus, he will be

held liable for a drowning which occurs as a result of the inattention of a lifeguard, or for the failure to perform the duty of effecting a prompt rescue. . . ." 4 Am. Jur., Amusements and Exhibitions, § 84.

"Proprietors of a bathing resort, in discharging the duty of ordinary care for the safety of patrons, may be obliged to keep someone on duty to supervise bathers and rescue any apparently in danger; and may also be held liable for negligence if, on information that a bather is missing, they are tardy in instituting search." 22 A.L.R. 636. (This rule applies to invitees. *Adams v. Enka Corp.*, 202 N.C. 767, 164 S.E. 367.)

In this case we have a 14 years old boy who could not swim entering a swimming pool in which the depth of the water increased from 2½ to 8 feet. The only notice of depth marked on the pool was this at this deep end: "Diving Board — Twelve feet". In the middle of the pool, a distance of 50 feet from either end, there was a rope secured at each side of the pool at a point where the water had a depth of 5 feet.

At the time the plaintiff's intestate drowned, more than 50 persons were in and around the pool, many of them children. One junior lifeguard, 16 years of age, was in charge. When the mother missed her son, she asked him if he had seen a little white headed boy. He directed her to inquire of the guard whom he had relieved and who was in the act of leaving the parking lot outside the enclosure. The guard drove away before the mother was able to get to him. According to the evidence of the lifeguard, the water in the pool was so murky as a result of the lime treatment that an object in the water could not be seen at a depth of more than 2 feet.

The facts in evidence, when tested by the applicable rules of law, made out a case for the jury. The judgment of nonsuit is

Reversed.