This is an action for the recovery of damages in the sum of $4,315.95, for the alleged negligent burning by the defendant of plaintiff's prize-house, or tobacco stemmery, in Greenville, N.C. on 31 January, 1910. The fire is alleged to have been caused by sparks from one of the defendant's engines while being operated on Pitt Street. The defendants deny liability. It was admitted, for the purposes of the trial, that the Norfolk Southern Railroad was liable to the plaintiff if the Norfolk and Southern Railroad Company and its receives were liable.
The plaintiff owns a lot in Greennville, on Pitt and Tenth streets, fronting 333 feet on Pitt Street and 110 on Tenth Street. Pitt Street runs north and south. The lot is about two blocks from the Norfolk Southern depot and 100 to 150 feet from the cotton platform. The Norfolk Southern Railroad track runs down the middle of Pitt Street, which is 49 feet wide. It is 20 feet from the railroad to the Jeffress property line, but this distance includes the sidewalk. The prize-house of plaintiff was built in 1901. It is approximately 60 feet wide and 108.6 feet long, with an ell added, which is 40 feet by 40 feet. The nearest point of the building is about 45 feet from the railroad; the boiler-room is 25 feet. The railroad, including track and cross-ties, is 8 feet wide. The building caught fire about 12 o'clock noon and was totally destroyed. The building had been leased for several years to Skinner House. The rest of the lot had been rented out the year before. At the time of the fire the vacant part of the lot was covered with cornstalks and grass. The fire was first discovered burning in the grass on the lot, and in this way reached the building. There was a city ordinance in force at the time, and had been in force for (219) several years, providing that, "Every occupant of a lot on any street shall keep the sidewalk clean and clear of weeds, grass, and other rank vegetation as far as such lot extends. If any rubbish, dirt, ashes, or other thing be placed or left without lawful authority upon such sidewalk or in the gutters or streets adjacent thereto, the occupant of such lot shall remove same. If, after written notice by the chief of police, or street commissioners, requiring him to remove the things prohibited by this ordinance, he shall fail for twenty-four hours to remove the same, he shall be fined $5 for each day thereafter it may so remain." *Page 184 
In August, 1907, the plaintiff instituted another action against the Norfolk and Southern Railroad Company for recovery of damages in the sum of $3,000 to this same lot, alleged to have been caused by the construction of this same railroad track down Pitt Street, alleging, among other elements of damage, "By reason of the frequent passing of the defendant's trains in such close proximity to plaintiff's property, plaintiff's property has become endangered from loss by fire arising from the constant issuing of smoke and sparks from defendant's engines, and has become annoying to the plaintiff and materially interferes with the operation of plaintiff's factory."
This action was tried at March Term, 1911, resulting in a judgment of $50 for the plaintiff, and this judgment was affirmed on appeal by plaintiff to Supreme Court at Fall Term, 1911.
There was evidence for the plaintiff tending to show that the defendant's freight train was passing along Pitt Street about 11:30 o'clock, and did some shifting on this street; that the engine was emitting sparks and that some of the sparks fell upon the vacant part of the Jeffress lot, or sidewalk, and that shortly thereafter the grass was burning in two places. The grass burned up near to the boiler-room, which was the nearest point to the street, when it was discovered by Archie Lockland, who had charge of the building and had the key to the same. He testified that he put the fire out and went home. In about twenty (220) minutes the building was on fire. The building burned about 12 o'clock noon. There was also evidence for the plaintiff that the grass caught again from a spark from the engine, after Lockland had put it out, and that this was the fire that eventually burned the factory. The plaintiff's evidence showed that the grass caught on the plaintiff's lot, or sidewalk, and that the fire was communicated to the building by burning grass, the plaintiff himself testifying that the nearest burnt grass to the railroad track was within 20 or 25 feet of the track. All of the evidence tended to show that the fire was communicated to the building by the burning grass, and there was no evidence that it caught directly from a spark. The plaintiff's evidence tended to show that the building and its contents were worth between $8,500 and $9,000. He collected $4,225 insurance on the building and contents.
The evidence of the defendant was that the freight train, No. 30, pulled by Engine No. 115, came into Greenville about 11 o'clock A. M., and left about 11:40; that the engine was properly equipped with a spark arrester in general and approved use, and that the netting of the spark arrester was in fact smaller and finer than the standard, it being 3 holes to 1 inch of space instead of 2 3/4 holes to the inch. That this rendered the danger of sparks escaping much less, on account of the *Page 185 
fact that the netting would stop smaller sparks. That it stopped practically all sparks and would choke with sparks and cause the engineer to stop at stations and knock them out. That the spark arrester was in good condition on that date. There was evidence of the good condition of the spark arrester for a number of days both prior and subsequent to the fire, and that the engine was being run carefully and properly by a competent engineer. There was evidence for the defendant that the building and personal property were worth less than the amounts claimed by the plaintiff. There was other evidence for the plaintiff.
The defendant does not plead contributory negligence, and the issues and responses thereto are as follows:
1. Was the property of the plaintiff injured by the negligence of the defendant, as alleged in the complaint Answer: Yes.
2. If so, what damage, if any, in excess of the $4,225 fire insurance collected by the plaintiff, is plaintiff entitled to recover (221) of defendant Answer: $3,275.
There was a judgment in accordance with the verdict, and the defendant appealed.
The exceptions appearing in the record present for our consideration the following contentions made by the defendant:
(1) That the plaintiff was negligent in permitting combustible matter to remain on his lot near the track of the defendant, and that this was the proximate cause of the injury to his property.
(2) That if, ordinarily, it would not be negligence in the plaintiff to permit combustible matter to remain on his lot, a higher duty should be imposed on him in this case, because he had recovered judgment against the defendant in another action on account of hazard to this property by the operation of defendant's trains, and had been thereby compensated for ordinary risks.
(3) That it being in evidence that the fire, after its origin, was under the control of an employee of the plaintiff, the defendant, although negligent in setting out the fire, would not be liable for the consequences which followed.
(4) That his Honor erroneously imposed the duty on the defendant of equipping its engine with a modern spark arrester.
(5) That his Honor stated as a contention of the plaintiff that the engine emitted an unusual quantity of sparks, when there was no evidence to support the contention.
(6) That his Honor, in a part of his charge, made the liability of *Page 186 
the defendant depend upon whether the plaintiff was negligent in permitting his lot to become and remain in a foul condition.
(7) That his Honor erroneously charged the jury that the measure of damage for burning the building was the difference in the value of the land before and after the fire.
(8) That his Honor erroneously permitted the tenant of the (222) plaintiff to testify that he had received no notice, under the ordinance in evidence, to remove trash, etc., from the sidewalk.
(1) This contention of the defendant seems to be fully met by the decision in Wyatt v. R.R., 156 N.C. 314, in which it was held that "an owner of land has a right to use it in the ordinary and usual way, and is not bound to remove dry grass, weeds, leaves, or other combustible material from his land adjoining a railroad right of way, in anticipation of probable negligence on the part of the railroad company, and a failure to perform such acts will not make him guilty of contributory negligence so as to preclude a recovery for damages caused by a fire originating through the railroad company's negligence." If the rule was otherwise, the defendant has not pleaded contributory negligence, and no issue was tendered presenting this question; and this objection would also be applicable to the next contention of the defendant.
(2) The second proposition insisted upon may be admitted, and the liability of the defendant would not be affected, because negligence is not an ordinary risk, and his Honor told the jury in clear and direct terms that the plaintiff could not recover if the engine was properly equipped with a spark arrester and was prudently operated by a competent engineer, He imposed the burden on the plaintiff of proving negligence, and instructed the jury that they were confined to the consideration of the two acts of negligence alleged — the defective spark arrester and the negligent operation of the train — and if the defendant was negligent in these respects, as the jury has found, the prior negligent conduct of the plaintiff, if any, would not prevent a recovery. The question is analogous to one considered in Arthur v. Henry, 157 N.C. 393, where it was held that consent given by the plaintiff to the defendant to blast for rock near his home would not prevent a recovery for injuries resulting from negligence in the operations.
(3) This position finds support in Doggett v. R. R., 78 N.C. 311, but it is not necessary for us to consider the facts and the reasoning in that case, because it appears from the evidence in this that two fires were set out by the engine of the defendant, and that it was the first fire which was under the control of an employee of the plaintiff, and that (223) after he extinguished it and left the premises, the property of the plaintiff was destroyed by the second fire. *Page 187 
(4) When the charge of his Honor is considered as a whole, which it is our duty to do, the criticism of it, as presented by the fourth, fifth, and sixth contentions of the defendant, are not, in our opinion, sustained by the record.
It is true that the word "modern" is used in connection with the appliances which the defendant was required to furnish, but "modern appliances" do not necessarily mean "the latest and best appliances," which the defendant insists was the effect of the charge, and could not have been so understood by the jury.
The Century Dictionary defines "modern" as "pertaining to the present era, or to a period extending from a not very remote past to the passing time; not ancient or remote in time; not antiquated or obsolete," and says by way of illustration, that Modern History comprises the history of the world since the fall of the Roman Empire or the close of the Middle Ages, and that modern fashions, tastes, inventions, and science generally, refer to the comparatively brief period of from one to three or four generations.
His Honor told the jury that it was the duty of the defendant "to have its engines properly equipped with such appliances for the arresting of sparks as are in general and approved use — not such as will prevent any spark from escaping, but such appliances as are in general and common use, and that will subserve the purpose intended," and again, "If you find by the greater weight of the evidence the spark which set fire to the grass, and which fire was communicated to and destroyed the building, was caused by the failure of the defendant to properly equip its engine with a spark arrester that was modern and in common use, or they failed to properly operate or manage it, it would be negligence on the part of the defendant company."
If his Honor stated a contention of the parties not supported by evidence, it was the duty of counsel to call it to his attention; but one of the witnesses testified that a shirt hanging in her garden was set on fire from the train; that as she approached the railroad crossing she had to put her apron over her head to keep the cinders from burning her, and that about that time sparks from the train set fire to the grass on the plaintiff's lot, which is, we think, some evidence that the (224) quantity of sparks was unusual, and particularly so when considered in connection with the evidence of the conductor of the defendant, that the spark arrester was in good condition and that the engine did not throw any sparks.
The part of the charge which the defendant thinks made the liability of the defendant depend upon the negligence of the plaintiff in permitting his lot to remain in a foul condition is where his Honor says: *Page 188 
"There is another aspect to this case which you will take into consideration. It is for you to say what the proximate cause was. If you find as a fact that the engine was properly equipped, properly managed and operated, and sparks were emitted that set fire to property off the right of way; that is to say, if sparks were emitted from the engine that was properly equipped, managed and operated, and fell upon the land of the plaintiff off the right of way, there would not be any breach of duty on the part of the defendant because his property was burned, and the defendant would not be responsible; if you should also find that the plaintiff allowed his premises to become so foul with combustible matter that no reasonably prudent man would allow it to stay in that condition near a railroad, and that the cause of the injury was not the negligence of the defendant, but the proximate cause was the negligent act of the plaintiff in allowing his lot to remain in a foul condition; and if you shall find from all the facts and circumstances and by the greater weight of the evidence that it was not the act of a reasonably prudent man having regard to the rights of others to permit the condition in his lot, and that it was a case of negligence on his part, then that would be a bar to recovery, and you would answer the first issue `No.' If, however, you find that the engine was not equipped with a modern, proper spark arrester, and that it was not properly managed and operated, and that the proximate cause of the injury to the plaintiff's property was the negligence of the defendant to provide proper appliances and equipment to the engine, then it is your duty to answer that first issue `Yes.'"
This was, in effect, instructing the jury to answer the first (225) issue "No" if the spark arrester was in good condition and the train prudently operated, or if the foul condition of the lot of the plaintiff was the proximate cause of his loss, and that the issue could not be answered in favor of the plaintiff unless the jury found that the engine was not properly equipped with a spark arrester and was not properly managed and operated, and that this was the proximate cause, which was more favorable to the defendant than it was entitled to.
(7) The measure of damage was stated correctly in the charge. Williamsv. L. Co., 154 N.C. 310. The house destroyed by the fire was a part of the land, and the injury was to the freehold. The inquiry, therefore, for the jury was, "How much has the land been depreciated in value by the fire?" which is but another way of ascertaining the difference in the value of the land before and after the fire.
It was, of course, competent to introduce evidence as to the size of the house, the quality and cost of the material used in its construction, the *Page 189 
workmanship, and other relevant facts, as bearing on the question of the decrease in value of the land.
(8) As the liability of the defendant was made to depend solely upon failure to provide a proper spark arrester, or to operate its train prudently, if these facts were found to exist, the prior negligence of the plaintiff, if any, would not have prevented a recovery, and in this view the ordinance introduced by the defendant, and the evidence of the tenant of the plaintiff that he had not been notified to remove trash from the sidewalk, would be irrelevant and harmless; but as the ordinance was admitted requiring notice to be given under certain conditions, it was not improper to permit the plaintiff to prove that the notice had not been given.
Upon a review of the whole record, we find
No error.
Cited: S. v. Vann, 162 N.C. 541; S. v. Blackwell, ib., 684; S. v.Fogleman, 164 N.C. 461; S. v. Cameron, 166 N.C. 384; Ferebee v. R. R.,167 N.C. 297; Barefoot v. Lee, 168 N.C. 90; Lea v. Ins. Co., ib., 478;Lloyd v. Venable, ib., 536; S. v. Wade, 169 N.C. 308.
(226)