WALTER LEE CHANDLER v. MORELAND CHEMICAL COMPANY.

(Filed 24 May, 1967.)

1. **Negligence § 24a—**

   Motion to nonsuit presents the question of law whether the evidence is sufficient to be submitted to the jury, taking the evidence favorable to plaintiff as true and resolving all conflicts in the evidence in plaintiff's favor, and nonsuit is properly denied if there is evidence, so considered, tending to support all essential elements of plaintiff's cause of action.

2. **Sales § 16— Evidence of negligence in delivering sulphuric acid in drum with defective bung held for jury.**

   Plaintiff's allegations and evidence were to the effect that the practice in emptying drums of sulphuric acid prepared by defendant was to re-

lease pressure by the vent or bung on top, then loosening the bung on the side by a one-quarter turn while the drum was standing on end, and then laying the drum down with the bung up and completing the removal of the bung by up to four complete turns, that plaintiff was engaged in opening the drum in this manner but that when he had loosened the bung less than a one-quarter turn, while the drum was on end, the bung came out, causing the acid, under the pressure of the liquid above the bung, to be forced violently through the opening onto plaintiff. The evidence further tended to show that the threads on the bung were worn and that there were two gaskets under the bung cap instead of one, so that the second gasket displaced the threads to such extent that a quarter turn released the contents. *Held:* Nonsuit was correctly denied.

**3. Damages § 12—**

Where plaintiff introduces evidence that he suffered permanently disfiguring scars from sulphuric acid burns resulting from defendant's negligence, the admission in evidence of the mortuary tables on the issue of damages is not error, and the court correctly charges on the question of permanent injury. G.S. 8-46.

APPEAL by defendant from *Crissman, J.,* January 2, 1967 Civil Session, GUILFORD Superior Court (High Point Division).

The plaintiff, Walter Lee Chandler, employee of Marlowe-Van Loan Corporation, High Point, North Carolina, on September 17, 1963 was severely burned by sulphuric acid escaping from a 55 gallon metal drum which had been filled, sealed and shipped by the defendant from its Charlotte plant to the plaintiff's employer. The allegations of negligence on which the plaintiff relies are contained in paragraph 6(a), (b) and (c) of the complaint:

"(a) Defendant shipped to plaintiff's employer a fifty-five gallon metal drum containing sulphuric acid, which drum had a metal bung-hole cap. The threads on said cap were worn to such a degree that they could not mate with the corresponding threads in the bung-hole of said drum. In addition the threads in said bung-hole itself were worn to such a degree that they could not mate with corresponding threads on a bung-hole cap. Defendant knew, or by the exercise of due care should have known, of the defective and dangerous condition of said drum; nevertheless, defendant failed to take any precautions whatsoever by way of inspecting and repairing said drum or warning the plaintiff of its defective condition, although defendant knew or in the exercise of due care should have known that defective conditions could not be observed by the plaintiff before the bung-hole cap was removed. As a result of said defective and dangerous conditions, when plaintiff unscrewed the cap less than one-quarter of a turn, the bung was completely released from any hold on the barrel, and the weight of the acid above the

bung level caused the cap to explode outwardly, allowing the acid to be forced violently through the opening onto the plaintiff's body.

(b) Defendant placed a bung-hole cap into said drum which cap was held to the drum by less than one-quarter of a turn rather than the eight to ten turns which are deemed safe and necessary on same or similar drums throughout the chemical industry.

(c) Defendant failed to attach said bung-hole cap to said drum in any manner so as to secure the drum and the contents within."

By answer the defendant admitted filling, sealing and shipping to plaintiff's employer, in August, 1963, a number of metal drums approximately 3 feet high and 26 inches in diameter. The drums had a $\frac{3}{4}$ inch bung on top and a 2 inch bung on the side of the drum, midway between the top and the bottom. The bung on top was intended to be opened "from time to time so as to allow the accumulated gases to escape"; that plaintiff was experienced in the use of sulphuric acid and with the proper manner of releasing pressure, especially in hot weather. The defendant denied all allegations of negligence and conditionally pleaded plaintiff's contributory negligence by the manner in which he opened the drum and such acts on the part of the plaintiff contributed to his injury.

The plaintiff's evidence disclosed that on September 17, 1963 the plaintiff and W. R. Jones, Sr. were preparing to empty a drum of sulphuric acid received from the defendant two weeks prior. When full, the drum weighed about 900 pounds. The acid contained in the drum weighed 750 pounds. Shortly before beginning the removal process, Jones opened the small vent or bung and released the pressure inside the barrel. The drum had a 2 inch hole in the side, midway between the two ends. This hole was threaded. A bung, or cap, also threaded, screws into this hole, sealing the acid inside the barrel. Jones testified he had had experience and had been used to sulphuric acid for 22 years. He testified the usual procedures were being followed in the incident in which the plaintiff was injured. The drum which he had vented and relieved the pressure that morning was standing on end. "We set the wrench at about nine o'clock . . ." and then turned down to seven o'clock just to loosen the cap. A turn from nine o'clock to six o'clock would be a one-quarter turn. After the cap is thus loosened, the practice is to lay the drum down with the bung up, then complete the removal of the cap by completing three and one-half to four complete turns and drain the barrel by rolling it over slowly until the bung is at the bottom and

the acid all drained from the drum. Jones testified that on September 17, after the one-quarter turn, the cap came off and a part of the acid went straight out from the bung and inflicted the burns on the plaintiff. An immediate examination of the drum and the cap revealed the threads on both were worn to the point where the one-quarter turn released the cap. Examination further disclosed that two heavy gaskets, or washers, had been placed under the cap. One of these was defective and broken. Jones testified the custom was to loosen the cap by a one-quarter turn while the drum was standing on end; otherwise, the heavy pressure required to start the cap caused the drum to spin. The witness testified he and the plaintiff followed the usual procedure on the occasion of the plaintiff's injury.

For the defendant Mr. Luper testified that on the day following the injury, he contacted Mr. W. R. Jones, Sr. at the Marlowe-Van Loan plant. Mr. Luper was investigating the injury on behalf of the defendant. He testified he used a recording machine and the recordings were typed and verified. He remembered Mr. Jones as having said that in trying to vent the drums from the top they had trouble . . . and had quit doing it. Plaintiff's counsel asked whether the conversation and recording did not show Mr. Jones as having said, "Well, the bung itself was an unusual bung for an acid drum, and it had two gaskets on it, which (while) that's not rare, but for this type bung it was. It shouldn't have had but just one gasket on it, but this one had two gaskets, and so, therefore, it wasn't very much thread that could have been screwed in the drum, that was the trouble". This quoted statement was admitted without objection.

At the close of the plaintiff's evidence and again at the close of all the evidence, the Court overruled motions for nonsuit. The Court submitted issues which the jury answered, as here indicated:

"1. Was the plaintiff, Walter Lee Chandler, injured and damaged by the negligence of the defendant, Moreland Chemical Company, as alleged in the complaint? Answer: Yes.

2. If so, did the plaintiff, Walter Lee Chandler, contribute to his own injury and damage by his own negligence, as alleged in the answer? Answer: No.

3. What amount of damages, if any, is plaintiff, Walter Lee Chandler, entitled to recover? Answer: $12,000.00."

From the judgment on the verdict, the defendant appealed.

*Jordan, Wright, Henson and Nichols and William L. Stocks by William L. Stocks for defendant appellant.*

*Schoch, Schoch and Schoch by Arch K. Schoch, Jr., Bencini & Wyatt by Frank B. Wyatt for plaintiff appellee.*

HIGGINS, J. The defendant insists: (1) the verdict and judgment in this case should be set aside for failure of the Court to grant the motion for judgment of nonsuit at the close of all the evidence; or (2) a new trial should be awarded because of errors in the Court's charge.

The rule by which this Court determines the sufficiency of the evidence to survive a motion for nonsuit in a civil case has been stated by this Court in many cases.

> "The question presented is whether the evidence was sufficient to entitle the plaintiff to. have the jury pass on it. 'If the evidence in the light most favorable to plaintiff, giving him the benefit of all permissible inferences from it, tends to support all essential elements of actionable negligence, then it is sufficient to survive the motion to nonsuit'. *McFalls v. Smith,* 249 N.C. 123, 105 S.E. 2d 297; *Taylor v. Brake,* 245 N.C. 553, 96 S.E. 2d 686; *Scarborough v. Veneer Co.,* 244 N.C. 1, 92 S.E. 2d 435.
>
> Inconsistencies and conflicts in the evidence, whether witnesses are mistaken or otherwise, truthful or otherwise, are questions of fact to be resolved by the fact finding body — the jury. Only a question of law is presented by demurrer to the evidence or motion to nonsuit. *Bell v. Maxwell,* 246 N.C. 257, 98 S.E. 2d 33; *Keener v. Beal,* 246 N.C. 247, 98 S.E. 2d 19; *Mallette v. Cleaners,* 245 N.C. 652, 97 S.E. 2d 245." *Lake v. Express, Inc.,* 249 N.C. 410, 106 S.E. 2d 518.

The latest statement of the rule is by Branch, J., in *Barefoot v. Joyner, et al, ante,* 388, decided this day.

The material evidence on the issue of negligence is contained in the statement of facts. The defendant shipped to the plaintiff's employer a drum containing 750 pounds of sulphuric acid — a potentially dangerous substance. The threads on the bung and the cap or plug were so worn out that the release of the cap could be affected by a quarter turn, whereas ordinarily a release required 3½ or 4 complete turns. Under the sealing cap the defendant had placed two gaskets, one of which was defective. This particular drum was not suited to the use of two gaskets. In following the customary procedure, by using a heavy wrench to begin removal of the plug (by making a quarter turn), then changing the position of the drum before making the customary additional turns ordinarily required, the bung or cap gave way, permitting the acid from the drum to gush

out and burn the plaintiff. The two gaskets were used — only one should have been used on this drum. The second gasket displaced the threads to such an extent that a quarter turn released the contents.

The condition of the drum, the manner in which it was sealed by the defendant, and opened by the plaintiff, raised issues of negligence and contributory negligence. These issues arose on the pleadings and were supported by evidence sufficient to justify their submission and to sustain the answers. "The plaintiff, however, is not required to make out his case by direct proof, but may rely upon circumstances from which a reasonable inference of negligence may be drawn, *Dail v. Taylor,* 151 N.C. 284; *Perry v. Bottling Co.,* 196 N.C. 175, in which event the evidence must be interpreted most favorably for the plaintiff, and if it is of such character that reasonable men may form divergent opinions of its import it is customary to leave the issue to the final award of the jury." *Corum v. Tobacco Co.,* 205 N.C. 213, 171 S.E. 78. By overruling the motion for nonsuit the Court did not commit error.

The defendant's objections to the charge are not sustained. The Court charged fairly upon the issues raised by the pleadings, and supported by the evidence. Over objection, the Court permitted the plaintiff to introduce the mortuary tables. The objection is based upon the alleged lack of evidence showing permanent injury. However, the evidence disclosed that permanently disfiguring scars resulted from the burns. *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753. The mortuary table is statutory, G.S. 8-46, and need not be introduced, but may receive judicial notice when facts are in evidence requiring or permitting its application. The objections to the charge are not sustained.

No error.