ANNIE R. JOHNSON v. CHRISTINE LAMB and HAZEL'S BEAUTY CENTER, INC., a Corporation.

(Filed 22 May 1968.)

**1. Trial § 40—**

It is the duty of the trial judge to submit issues necessary to settle the material controversies as to facts arising on the pleadings, but the form and number of the submitted issues is a matter resting in the sound discretion of the trial judge, it being sufficient that the issues be framed so as to present the material matters in dispute, to enable each party to have the full benefit of his contentions before the jury and to enable the court, when the issues are answered, to determine the rights of the parties under the law.

**2. Pleadings § 29—**

An issue arises upon the pleadings when a material fact is alleged by one party and controverted by the other. G.S. 1-196, G.S. 1-198.

**3. Master and Servant § 33—**

Where the answer of the corporate defendant admits that the alleged tort-feasor was its employee and that at the time of the injury complained of the employee was acting in the course of her employment, negligence of the tort-feasor is imputed as a matter of law to the corporate defendant under the doctrine of *respondeat superior*, and it is not necessary to submit to the jury an issue upon the question of employment.

**4. Trial § 41—**

Failure to submit to the jury an issue not material to the determination of the rights of the parties is not error.

**5. Pleadings § 29—**

A material fact is one which constitutes a part of plaintiff's cause of action or of defendant's defense.

**6. Master and Servant § 33—**

Refusal of the court to submit to the jury an issue with reference to the alleged failure of the corporate defendant to supervise its employee is not error, since, if the employee was negligent while acting in the course of employment and such negligence was the proximate cause of injury to another, the employer is liable under the doctrine of *respondeat superior*, notwithstanding the employer exercised due care in the supervision of the employee, and if the employee was not negligent, the employer is not liable irrespective of failure to supervise.

**7. Cosmetologists—**

G.S. 88-11, which restricts an apprentice cosmetologist to the practice of her trade "under the direct supervision of a registered managing cosmetologist," does not alter the common law rules governing the liability of the apprentice's employer for the consequences of the employee's acts in the course of employment, and, consequently, there is no necessity to submit to the jury as a material issue the presence or absence of supervision in the course of the apprentice's employment.

**8. Same—**

A cosmetologist is not an insurer against injury from the treatment she undertakes to render, nor is she liable for the consequences of every error of judgment.

**9. Same—**

Where an apprentice cosmetologist possesses the skill which others in her trade similarly situated possess, exercises reasonable care in the application of her skill to the customer's case and uses her best judgment in the performance of the service, there can be no liability for injury upon either the apprentice or the proprietor of a salon on the basis of negligence.

**10. Appeal and Error § 42—**

Statements in the record disclosing that appellant's objection was not interposed until after the answer of the witness are controlling notwithstanding statements in appellant's brief to the contrary.

**11. Trial § 15—**

An objection to a question asked a witness must be interposed when the question is asked and before the answer is given or the right to have the testimony excluded is waived.

**12. Damages § 13;   Appeal and Error § 53—**

Refusal of the court to permit plaintiff to introduce in evidence the mortuary tables contained in G.S. 8-46 as bearing upon the question of damages resulting from defendant's negligence, *held* not error since the jury answered the issue of negligence in the negative.

**13. Appeal and Error § 31—**

Assignments of error to the court's misstatement of appellant's contentions as to the facts cannot be sustained when the misstatements were not called to the court's attention in apt time to permit a correction.

**14. Negligence §§ 7, 28—**

An instruction to the effect that the defendant should have been able to foresee the precise injury which resulted from his conduct is prejudicial, since all that plaintiff is required to prove on the question of foreseeability is that the defendant might have foreseen that some injury would probably result from his conduct.

**15. Cosmetologists—**

Failure of the court to instruct that the defendant cosmetologist must possess the knowledge and skill which is customarily possessed and exercised by cosmetologists in the area wherein she practices, *held* prejudicial to the plaintiff customer.

APPEAL by plaintiff from *Crissman, J.,* at the 11 September 1967 Civil Session of GUILFORD, High Point Division.

The plaintiff went to the beauty salon of the corporate defendant to have her hair, eyebrows and lashes tinted. The tinting of the eyebrows and lashes was done by Miss Lamb, an employee of the corporate defendant and the holder of an apprentice's license issued by the State.

The plaintiff alleges that she was painfully burned about her eyebrows, resulting in some loss of pigmentation of the skin and that the negligence of the defendants was the proximate cause of

these injuries. She alleges that Miss Lamb was negligent in that, contrary to the customary practice of the trade, she rubbed excessively the areas of the plaintiff's face exposed to the tinting solution and made two applications of it and that the corporate defendant was independently negligent in that it did not provide proper supervision and direction for Miss Lamb. The defendants filed a joint answer denying all allegations of negligence, and alleging that Miss Lamb used, in the usual and customary manner, a standard product of the trade, known as "Roux Lash & Brow Tint," and that the plaintiff, desiring a darker tint than was obtained by the first application, requested Miss Lamb to repeat the operation.

The following issues were submitted to the jury, the plaintiff excepting thereto:

"1.　Was plaintiff injured by the negligence of defendants, as alleged in the complaint?

"2.　What amount of damages, if any, is plaintiff entitled to recover from defendants?"

The jury answered the first issue "No," and did not answer the second. From a judgment in accordance with the verdict, the plaintiff appeals.

The testimony of the plaintiff was to the following effect: She went to the beauty salon to have her hair, eyebrows and lashes tinted by another employee of the corporate defendant, Mrs. Wood, a licensed operator, who had previously applied such treatments to the plaintiff without any adverse reaction. After completing the tinting of the plaintiff's hair, Mrs. Wood, having another customer, requested Miss Lamb to do the tinting of the eyebrows and lashes, Accordingly, the plaintiff went to Miss Lamb's chair. Miss Lamb placed her in a reclining position, removed the makeup which the plaintiff had previously applied, tinted the lashes, applied some liquid to the eyebrows, waited a few minutes and then applied another liquid. She then told the plaintiff she had gotten some of the tint on the skin and would have to remove it. The plaintiff informed Miss Lamb that her brows were burning and stinging. Miss Lamb rubbed the area around the eyebrows with moist cotton, applying "hard pressure." "It felt like she was taking the skin off." Miss Lamb then said, "This didn't take and I am going to apply another coat." The plaintiff made no comment concerning that and Miss Lamb repeated the process. The plaintiff did not request this. At the conclusion of the second application, Miss Lamb again said that there was some of the substance on the plaintiff's skin and rubbed "real hard" with moist cotton. The plaintiff was experiencing pain, her eyebrows were

"awful red * * * stinging and hurting." The director of the salon was not present during any of the above procedure. After the plaintiff left the salon, blisters developed around the eyebrows before she applied any other substance to the affected area.

Medical testimony was to the effect that the plaintiff sustained first and second degree burns around her eyebrows, that she had not previously been treated for allergy or skin irritation, and that there was some permanent loss of pigmentation of the skin in that area but no true scarring.

Mrs. Wood, called as a witness by the plaintiff, testified that she had had substantial experience in tinting eyebrows and eyelashes, including those of the plaintiff. The Roux solution, consisting of three bottled solutions used in succession, is the one customarily used for this treatment and had previously been used on the plaintiff by Mrs. Wood. The third solution used in the treatment is for the removal of stains. According to the testimony of Mrs. Wood, "It is normal to rub after this third solution * * * a tiny bit" with cotton on a toothpick but not to apply pressure or to rub vigorously.

Directions accompanying the kit of Roux solutions included the following:

"No. 6. — Don't permit any accidental stains to remain. * * * Any stain accidentally produced should immediately be removed with soap and water applied by means of absorbent cotton.

"No. 7. — Don't rub skin. Delicate tissues are easily irritated by friction. * * *

"The observance of the ten simple rules set forth herein will produce the best results with the greatest degree of efficiency. * * *

"Rule No. 1. — Sit patron in upright position, keeping the head in upright position. * * *

"Rule No. 10. — If deeper shades are desired, repeat the process. * * *"

The defendants' evidence consisted of the testimony of Miss Lamb and Mrs. McAllister, the latter testifying as an expert in the field of cosmetology.

Miss Lamb testified, in substance: She had frequently used the Roux materials in such operations. She is familiar with the instructions packaged with them. At the time of her treatment of the plaintiff she was a duly licensed apprentice. She tinted the eyebrows and lashes of the plaintiff at the request of Mrs. Wood, and under her

supervision, Mrs. Wood making no suggestion concerning or criticism of Miss Lamb's procedure. Miss Lamb first placed the plaintiff in a reclining position in the chair and removed the makeup previously applied by the plaintiff. Next, with cotton on toothpicks, she applied the Roux Solution No. 1 and followed it with Solution No. 2 to tint the eyebrows. She then removed from the surrounding skin the excess of the tinting solution, using first water and then Solution No. 3, the stain remover, putting this on with a cotton-covered toothpick, rubbing "lightly on the skin." She then used a piece of cotton with a mild shampoo and water to take off the stain remover. This completed the process. The plaintiff examined the result and requested Miss Lamb to repeat the process to get a darker color, which Miss Lamb did, first getting the approval of Mrs. Wood. Following the second application, the plaintiff viewed the result in a mirror, expressed her satisfaction, and left the shop without making any complaint. She returned to the salon that afternoon to see the director of the salon, who was not in the salon during the treatment, but said nothing to Miss Lamb. In the treatment no more of the tint solution got on the plaintiff's skin than is customary in such operation. Miss Lamb rubbed the plaintiff's eyebrows several times "softly," applying some pressure to take off the excess tint material.

Mrs. McAllister, the operator of the beauty school from which Miss Lamb graduated, testified in substance: She, herself, studied in the Roux Laboratory on several occasions and has had practical experience in the application of these products. In the application of them, it is proper to place the customer in a reclining position of about 45 degrees. The making of a second application is frequent in the cosmetology trade. The procedure which Miss Lamb testified she followed was that which is customary and is the regular practice of cosmetology in the High Point area. It is quite common for some redness to appear over the eyebrows following a second application of the tinting procedure. Normally, the Roux solutions do not tend to irritate the skin. The application of them should be discontinued if the patron complains of pain about the eyebrows during the process. It would be incorrect to rub vigorously in the application. A rubbing of the eyebrows by a customer after she leaves the shop, which a majority of them do, can cause irritation.

The plaintiff assigns as error certain rulings upon the admissibility of evidence, instructions to the jury and the submission to the jury of the above issues, contending that these were inadequate. The record does not show that the plaintiff tendered other issues to the court.

*Haworth, Riggs, Kuhn & Haworth by Walter W. Baker., Jr., and Robert L. Cecil for plaintiff appellant.*

*Jordan, Wright, Henson & Nichols and Fisher & Fisher by G. Marlin Evans for defendant appellees.*

LAKE, J. G.S. 1-200 provides, "The issues arising upon the pleadings, material to be tried, must be made up by the attorneys appearing in the action, or by the judge presiding, and reduced to writing, before or during the trial." This provision is mandatory. It is the duty of the trial judge to submit such issues as are necessary to settle the material controversies as to facts arising on the pleadings. *Heating Co. v. Construction Co.,* 268 N.C. 23, 149 S.E. 2d 625; *Stanback v. Haywood,* 209 N.C. 798, 184 S.E. 831. Ordinarily, the form and number of issues to be submitted is a matter which rests in the sound discretion of the trial judge, it being sufficient that the issues be framed so as to present the material matters in dispute, to enable each party to have the full benefit of his contentions before the jury and to enable the court, when the issues are answered, to determine the rights of the parties under the law. *Rubber Co. v. Distributors,* 253 N.C. 459, 117 S.E. 2d 479; *Lumber Co. v. Construction Co.,* 249 N.C. 680, 107 S.E. 2d 538; *O'Briant v. O'Briant,* 239 N.C. 101, 79 S.E. 2d 252; *Griffin v. Insurance Co.,* 225 N.C. 684, 36 S.E. 2d 225.

It is necessary to submit to the jury only such issues as arise upon the pleadings and are material to be tried. *Cecil v. Henderson,* 121 N.C. 244, 28 S.E. 481. An issue arises upon the pleadings when a material fact is alleged by one party and controverted by the other. G.S. 1-196, G.S. 1-198; *Heating Co. v. Construction Co., supra.* "If a material fact alleged in the complaint is not denied by the answer, such allegation, for the purpose of the action, is taken as true and no issue arises therefrom." Strong, N. C. Index, 1st Ed., Pleadings, § 29. *Accord: Heating Co. v. Construction Co., supra.*

It is admitted in the answer that Miss Lamb was the employee of the corporate defendant and, in treating the plaintiff, was acting in the course of her employment. Consequently, upon the face of the pleadings, if Miss Lamb was negligent in the performance of this treatment her negligence would be imputed, as a matter of law, to the corporate defendant under the doctrine of *respondeat superior,* and it was not necessary to submit to the jury an issue upon the question of her employment.

There was also no error in the failure of the court to submit to the jury an issue with reference to the alleged failure of the corporate defendant to supervise its employee, Miss Lamb. While this failure is alleged in the complaint and denied in the answer, the controversy

as to that fact was not material to the determination of the rights of the parties and, therefore, no issue with reference to it was necessary. A material fact is one which constitutes a part of the plaintiff's cause of action or of the defendant's defense. *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16. If an employee is negligent while acting in the course of employment and such negligence is the proximate cause of injury to another, the employer is liable in damages under the doctrine of *respondeat superior,* notwithstanding the fact that the employer, himself, exercised due care in the supervision and direction of the employee, the employee's violation of instructions being no defense to the employer. *Gillis v. Tea Co.,* 223 N.C. 470, 27 S.E. 2d 283, 150 A.L.R. 1330; *West v. Woolworth Co.,* 215 N.C. 211, 1 S.E. 2d 546. Conversely, failure to instruct or supervise an employee does not impose liability upon the employer if, in fact, the employee was guilty of no negligence in the performance of his work. In such event, the omission of instructions or supervision, assuming a duty to supply them, would not be a proximate cause of the injury. In 35 Am. Jur., Master and Servant, § 548, it is said:

"Liability to a third person for the act of an employee, if any, must be predicated upon the wrongful act or omission of the employee at the time of the infliction of the injury complained of, or at least upon an act or omission which in the case of an experienced or competent person would have been wrongful. If the employee has done no such act or omission, there is no liability on the part of the employer, however inexperienced, incompetent, and unfit for their tasks the defendant's employees may have been. Any common-law liability on the part of the defendant to a third person must find its basis in negligent conduct on the part of its servant or servants. It cannot rest upon their want of qualification for their task alone."

Chapter 88 of the General Statutes provides for the licensing of apprentice cosmetologists and registered cosmetologists. G.S. 88-11 prohibits a registered apprentice from operating a cosmetic art beauty shop, limiting the right of such apprentice to practice of the trade "under the direct supervision of a registered managing cosmetologist." It was not the intent of this statute to impose upon the employer of an apprentice cosmetologist a duty, owed to customers of the establishment, to stand at the side of the apprentice and personally direct each act performed in the rendering of each service to each customer. The act does not alter the common law rules governing the liability of the employer of an apprentice cosmetologist for the consequences of the employee's acts in the course of her em-

ployment. Consequently, the presence or absence of supervision of Miss Lamb by the corporate defendant, through its other employees, is not a material part of the plaintiff's cause of action or of the defense of the corporate defendant and no issue upon that controversy need be submitted to the jury and no instruction to the jury concerning such supervision, or lack of it, was required.

We do not have here the case of a customer, patient or client contracting for the professional services of the owner of an establishment and, without his or her knowledge, being turned over to an employee for treatment, nor do we undertake to determine the rights of a person injured under those circumstances. The beauty salon being owned by a corporation, the services of some person other than the owner were, of necessity, contemplated by the plaintiff when she contracted for the treatment in question. She knew of and acquiesced in the transfer of her treatment from Mrs. Wood to Miss Lamb.

Like the physician, or other person undertaking to perform professional services, the cosmetologist is not an insurer against injury from the treatment she undertakes to render, nor is she liable for the consequences of every error of judgment. In *Hunt v. Bradshaw,* 242 N.C. 517, 88 S.E. 2d 762, we said of a physician:

"(1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. [Citations omitted.] If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

The same principle is applicable to the cosmetologist alleged to have caused injury to her customer in the course of treatment. 10 Am. Jur. 2d, Barbers and Cosmetologists, § 16. Obviously, the proprietor of a beauty salon may not, by the assignment of a customer to an inexperienced apprentice, nothing else appearing, reduce the undertaking of the proprietor to bring to the performance of the service the degree of professional skill and ability ordinarily possessed by those engaged in the trade in the particular locality or area. If, however, the apprentice performing the service possesses such skill, exercises reasonable care in the application of it to the customer's case and uses her best judgment in the performance of the service, there can be no liability for injury upon either the apprentice or the

proprietor of a salon on the basis of negligence in the performance of the service.

. The plaintiff assigns as error the overruling of her objection to testimony by Mrs. McAllister that the rubbing of the treated area by a patron after she leaves the salon can cause irritation and that from her experience she has observed that the majority of patrons do this. The record shows that the questions eliciting this testimony were clear and the plaintiff's objection was not interposed until after the answer of the witness was given. The plaintiff, in her brief, says that this is an error in the transcript, the objection having. actually been entered before the question was answered. The defendants, in their brief, say that the record is correct in this respect. In such situation, we must assume that the record speaks the truth. "It is the general rule that an objection to a question asked a witness must be interposed when the question is asked and before the answer, or the right to have the testimony excluded is waived." *Brown v. Hillsboro,* 185 N.C. 368, 117 S.E. 41.

The plaintiff also assigns as error the refusal of the court to permit the plaintiff to introduce in evidence the mortuary tables contained in G.S. 8-46. The purpose of the proposed evidence was to bear upon the question of damages for the alleged disfigurement of the plaintiff by permanent loss of pigmentation about the eyebrows. It is a sufficient answer upon the present appeal to note that the jury, having answered the first issue in the negative, did not reach the issue of damages and, consequently, the plaintiff was not prejudiced by the exclusion of. the proposed evidence. Furthermore, the table being statutory, need not be introduced in evidence in order to make use of it upon the question of damages when other facts are in . evidence permitting its application. See *Chandler v. Chemical Co.,* 270 N.C. 395, 154 S.E. 2d 502.

The plaintiff assigns as error several alleged misstatements in the charge of the court to the jury as to the contentions of the parties and other errors in the court's review of the evidence introduced. The statements in question relate to contentions as to the facts, not to contentions as to the law applicable thereto. See *Ratliff v. Power Co.,* 268 N.C. 605, 151 S.E. 2d 641. These assignments of error cannot be sustained for the reason that they were not called to the attention of the court at the time so as to permit the court to correct its alleged inadvertent mistake. "If the defendant [or plaintiff] believed the trial judge was stating his contentions incorrectly in his charge, it was his duty to call the court's attention to the incorrectness before the case was finally given to the jury, so that it could be corrected." *Fisher v. Rogers,* 251 N.C. 610, 112 S.E. 2d 76.

See also: *Murchison v. Powell*, 269 N.C. 656, 153 S.E. 2d 352; *Dickson v. Coach Co.*, 233 N.C. 167, 63 S.E. 2d 297; *Steele v. Coxe*, 225 N.C. 726, 36 S.E. 2d 288; *Ball v. McCormack*, 172 N.C. 677, 90 S.E. 916; *Jeffress v. R. R.*, 158 N.C. 216, 73 S.E. 1013.

There are, however, errors in the charge, assigned and brought forward into the brief of the plaintiff, which require the case to be returned to the superior court for a new trial. Included in the charge is the following statement with reference to proximate cause:

> "So, the court charges you that it is generally held that in order to warrant you members of the jury in finding that the negligence of the defendants was the proximate cause of the plaintiff's injury, it must appear that the injury was the natural and probable consequence of the defendants' negligent act, and that *it* ought to have been foreseen in the light of attending circumstances." (Emphasis added.)

In *Hart v. Curry*, 238 N.C. 448, 78 S.E. 2d 170, this Court granted a new trial for error in charging the jury substantially in accordance with the above quoted portion of the charge in the present case. While this Court has repeatedly said that foreseeability of injury is an element of proximate cause, it is clear that it is not necessary that the defendant should have been able to foresee the precise injury which resulted from his conduct. *Williams v. Boulerice*, 268 N.C. 62, 149 S.E. 2d 590; *Bondurant v. Mastin*, 252 N.C. 190, 113 S.E. 2d 292. "All that the plaintiff is required to prove on the question of foreseeability, in determining proximate cause, is that in 'the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.' " *Hart v. Curry, supra; White v. Dickerson, Inc.*, 248 N.C. 723, 105 S.E. 2d 51. The above quoted portion of the charge in the present case implies the contrary and we cannot conclude that the jury was not misled by it. It was, therefore, error prejudicial to the plaintiff.

After the jury had deliberated for a considerable time, it returned to the courtroom and requested a further instruction as to what constitutes negligence "in the operation of this business." The court gave a further instruction, which, after a general definition of negligence, included the following:

> "It [negligence] is the failure to do what a reasonable and prudent man or woman would have done under the same and similar circumstances, or the doing of something which a reasonable and prudent man or woman would not have done under the same and similar circumstances, plus the fact that the doing or

not doing of that something that might be required, under the same and similar circumstances, is the proximate cause of the injury sustained, that is, the cause without which the injury would not have occurred, and it being such that a person of reasonable prudence should have foreseen that *that was likely to be the result of what took place;* and in this instance, if you are satisfied from the evidence and by its greater weight, on this first issue, that the defendant failed to exercise that degree of care that a reasonable and prudent man or woman, *with the usual and customary knowledge of cosmetology,* that that person has failed to exercise the care that a person with those capabilities would have, and should have, under the same and similar circumstances, then that would be negligence; *or,* if the defendant did something that a reasonable and prudent operator would not have done under the same and similar circumstances, that is, if the defendant failed to do what was done as skillfully and as carefully as a reasonable and prudent beauty operator would have and should have, under the same and similar circumstances, then that would be negligence, and it would be your duty, if you find that that were true and that that was the proximate cause of the injury that this plaintiff had, then it would be your duty to answer that first issue, 'Yes.' " (Emphasis added.)

In the first italicized portion of this supplementary instruction in response to the specific request for clarification by the jury, the court inadvertently repeated the above mentioned error with respect to the necessity of foreseeability of the precise injury which resulted. In the second italicized portion, the court failed clearly to state that the defendant operator must possess the knowledge and skill which is customarily possessed and exercised by cosmetologists in the area wherein she practices. The jury could well interpret the instruction to mean it must find the defendant operator failed to exercise the care of a reasonable person having no more knowledge of cosmetology than is usually and customarily possessed by the public generally. The defendants held themselves out to the public, including this plaintiff, as possessing a substantially higher degree of knowledge and skill in the art of cosmetology than that possessed by the general public, and they are liable for damages, if any, proximately caused by their failure, if any, to have that degree of skill which cosmetologists practicing in the High Point area customarily possess. This error in the charge was also prejudicial to the plaintiff.

New trial.