***********
The Full Commission reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order except for minor modifications. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Baddour with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Industrial Commission, are subject to and bound by the provisions of the Tort Claims Act, and the Commission has jurisdiction over the parties and of the subject matter.
2. It is stipulated that all parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
3. It is stipulated that neither of the parties in this action is appearing in a representative capacity.
4. It is stipulated that there are no third-party defendants or cross-claimants.
5. It is stipulated that this action was filed with the Commission pursuant to the provisions of the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291 et seq., against the Department of Correction, which is a department of the State of North Carolina.
6. It is stipulated that plaintiff, Florine K. Sanders, has alleged negligence on the part of James C. Pierce, James McCann, James Minter, Richard Barnes, Rodney Phillips, Ronnie Carter, and Corrections Officer Daniels.
7. It is stipulated that the Defendant filed an Answer with the Commission denying all allegations of negligence.
8. It is stipulated that at all times relevant to this case, the individuals alleged in the Amended Affidavit as negligent employees or agents of the State of North Carolina were in fact employees or agents of the State of North Carolina.
9. The parties stipulate and agree that on or about the morning of April 18, 1999, the plaintiff was a lawful visitor at the Caswell County Correctional Center near Yanceyville. Plaintiff was in the visitation room and sat down in a chair provided by the North Carolina Department of Correction. The chair broke and plaintiff fell to the floor. This occurrence is the incident that gave rise to this tort claim.
10. The parties stipulate and agree that prior to her fall of April 18, 1999, plaintiff was totally disabled as a result of a workers' compensation injury to her knee and low back. She continues to be totally disabled as a result of her workers' compensation injuries. As a result, the plaintiff is not claiming any wage loss as damages in this matter.
 ***********
At the close of the liability evidence, the Deputy Commissioner ruled from the bench on the issue of negligence as set forth below. Based upon the evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years old.
2. On April 18, 1999, plaintiff went to Caswell County Correctional Center in Yanceyville, North Carolina, to visit an inmate. She was allowed into the visitation room and sat down in a chair that was provided for visitors. As plaintiff sat down, the chair broke and she fell to the floor injuring her left shoulder and back.
3. The visitation room was approximately 30 feet by 40 feet in dimension and was open except for one post or column in the middle of the room. The visitation room was furnished with several vending machines and had twenty-five tables set up in rows. Each table was arranged with four chairs around it. The plastic chairs had metal legs that went from front to back like a horseshoe. The front leg and back leg were connected by a metal brace that was welded on each leg.
4. Plaintiff's chair collapsed as a result of the leg braces separating from the legs at the weld.
5. Cracks in the leg bracing welds of fifteen other chairs in the waiting room were found upon visual inspection following plaintiff's accident. This evidence was admitted only for the purpose of showing that the condition of the chairs could have been discovered upon visual inspection.
6. The shift Officer in Charge was primarily responsible for the maintenance and inspection of the Caswell County visitation room and its contents on the date of injury. The Officer in Charge that date was Lt. James W. McCann. The other employees of defendant that were assigned to the visiting room at the time of the injury were James Minter, Richard Barnes, and Rodney Phillips.
7. The building containing the visitation room was completed in 1992 or 1993 and new furniture was put into the visitation room at that time. The furniture was never changed out prior to the date of injury.
8. Defendant did not have any policy, plan, or procedure regarding the replacement, periodic inspection, or maintenance of its chairs or other furniture in the visitation room, except for periodic inspections for contraband. There was no standard operating procedure regarding the safety inspection of the chairs. Defendant did not properly train its employees in the proper method of inspecting the chairs for safety defects. It was not reasonable to have such deficiencies relating to furniture that was used by lawful visitors to the facility. Lt. McCann and his supervisors were negligent in failing to implement a policy, plan, training, or procedure for chair safety inspections prior to the date of injury.
9. It was the visitation officers' duty to inspect the chairs for any contraband prior to their use. During the inspection, they would make a cursory visual inspection of the chair legs; however, the primary purpose of the inspection was for contraband. This inspection would take only a few seconds per chair. The chairs were never inspected for cracks in the legs prior to the time of injury. It was not reasonable for defendant's employees to make such a cursory safety inspection of furniture that was used by lawful visitors of the facility. The Full Commission finds that Lt. McCann, James Minter, Richard Barnes, and Rodney Phillips were negligent in failing to properly inspect the chairs prior to the time of injury.
10. Had the defendant's employees not been negligent in their prior inspections or in failing to have any policy, plan, training, or procedure regarding the replacement, inspection, or maintenance of its chairs, visible defects in the chairs would have been found and corrected prior to plaintiff's fall and injuries. As such, the negligence of defendant's employees was the proximate cause of plaintiff's injuries to her back and left shoulder.
11. Following the accident, plaintiff was transported by EMS to Danville Regional Hospital in Danville, Virginia. After being released from the Danville Regional Hospital emergency room, plaintiff sought treatment from her family physician, Dr. Arnett Coleman. Dr. Coleman treated plaintiff's shoulder condition with water therapy and prescription medications. Dr. Coleman then referred plaintiff to Dr. Laurence Dahners, an orthopedic surgeon.
12. All of Dr. Coleman's treatment of plaintiff's shoulder condition resulted from her fall on April 18, 1999. Such treatment was medically reasonable and necessary, as were the charges for the same.
13. Upon referral by Dr. Coleman, plaintiff was treated by Dr. Laurence Dahners, an orthopedic surgeon. Dr. Dahners treated plaintiff from May 18, 1999, through October 24, 2000, for her shoulder condition resulting from her fall on April 18, 1999.
14. Dr. Dahners initially treated plaintiff with multiple injections. Due to her persistent pain, plaintiff underwent arthroscopy by Dr. Dahners of her left subacromial space of her shoulder with removal of the end of her collarbone and the bursa, also known as a Mumford procedure, on January 13, 2000. This surgery removed her shoulder joint.
15. All of Dr. Dahners' treatment of plaintiff's shoulder condition resulted from her fall of April 18, 1999. Such treatment was medically reasonable and necessary, as were the charges for the same.
16. Plaintiff's fall on April 18, 1999, caused or significantly contributed to her left shoulder condition that has required treatment. Because of plaintiff's shoulder injury, she cannot push or pull with her left arm, or lift a gallon of milk. Plaintiff can only raise her left arm above her head for a few seconds; then it falls down. She has limited motion and decreased strength in her left arm. Plaintiff's pain level, range of motion, and strength in her left shoulder and arm have never returned to their pre-injury baseline, and never will. Her limited use of her left arm has persisted for more than a couple of years and is not expected to resolve. As such, her loss of use of her left arm is a permanent condition.
17. At the time of her shoulder injury on April 18, 1999, plaintiff was not working due to a workers' compensation injury to her back and knee that occurred on August 18, 1997.
18. Since her shoulder injury, plaintiff's pain level, range of motion, and strength in her left shoulder and arm have not returned to their pre-injury baseline. Plaintiff has had shooting pain in her left arm and shoulder since the date of injury. Her pain is tolerable at times and intolerable at other times. Plaintiff's left shoulder condition is a permanent loss of her left shoulder joint that limits her use of her left arm.
19. Plaintiff's pain has had a major impact on her life. She now limits her driving and social activities. Her pain is noticeable by her friends and others around her. Plaintiff tries to remain outgoing and active, but she is unable to achieve her prior level of activity. Her pain has limited her social life. Plaintiff has had shooting pain in her left arm and shoulder since the date of injury. The pain never fully resolves. Her pain makes it impossible for her to be comfortable and, therefore, she must constantly change position. Plaintiff's pain is so intolerable on some days that she prays for strength and relief. Her pain has persisted for more than a couple of years and it is not expected to resolve. As such, her pain from her left arm is a permanent condition.
20. Plaintiff lives by herself and has trouble with her activities of daily living due to her shoulder injury. Plaintiff has problems washing her hair, dressing herself, and she cannot lift anything over a pound. Plaintiff is right-hand dominant, but she must use her right hand for her cane, which is required as a result of her prior disability.
21. As of the date of hearing before the Deputy Commissioner, plaintiff's related medical bills for her left shoulder injury totaled $15,073.93. This includes the following amounts: Caswell County EMS, $202.74; Danville Regional Hospital, $468.50; Danville Radiologists, $47.00; Emergency Services of Danville, $104.00; UNC Physicians, $2,685.33; UNC Hospital, $4,973.93; Dr. Coleman, $960.00; Duke Center for Living, $245.50; prescriptions drugs, $5,386.93. None of these bills were a result of plaintiff's prior workers' compensation claim. Plaintiff has chronic pain and is continuing to be treated for such with the following drug therapy: Tylox, Flexeril, Neurontin, Clonidine, Vicodin, and Celebrex. As of the date of hearing, Plaintiff's related medical bills for her left shoulder injury totaled $15,073.93. Plaintiff has not included any medical bills that have been paid by workers' compensation in her claim for damages. Reducing the medical bills for the cost of emergency care and the surgical costs leaves approximately $6,500.00 for on-going medical care. Based on the time period over which these expenses have been incurred, the on-going costs average about $2,000.00 per year. Her medical and prescription care is of a continuing nature.
22. According to the mortality table found in N.C. Gen. Stat. §8-46, plaintiff had a life expectancy of approximately 22 additional years as of the date of hearing before the Deputy Commissioner. Since the mortality table is statutorily based, judicial notice of it may be taken. Chandler v. Chemical Co.,270 N.C. 395, 400, 154 S.E.2d 502, 506 (1967); Rector v. James,41 N.C. App. 267, 272, 254 S.E.2d 633, 637 (1979).
23. Based upon her statutory life expectancy of 22 years and the $2,000.00 per year average cost of medical expenses likely to be incurred because of her compensable injuries, plaintiff is entitled to $44,000.00 for future medical care. Since no inflation factor was applied in deriving the $2,000.00 per year average, it is reasonable to assume that the present value of such medical care would be approximately $44,000.00.
24. Plaintiff is entitled to $15,073.93 for past medical expenses related to her compensable injuries.
25. Plaintiff is entitled to $20,000.00 for pain and suffering with respect to her back and other injuries.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. Defendant's named employees were negligent while acting within the scope of their employment. This negligence proximately caused plaintiff's left shoulder condition and back condition and the resulting damages. N.C. Gen. Stat. § 143-291, et seq.
Plaintiff was not contributorily negligent. N.C. Gen. Stat. §143-291, et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendant shall pay compensatory damages to plaintiff in the amount of $79,073.93.
2. Defendant shall pay the costs.
This 22nd day of June 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_________________ PAMELA THORPE YOUNG COMMISSIONER